Moore, Appellant, *v.* Moore.

Argued November 28, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*George Wharton Pepper,* with him *J. W. McWilliams,* for appellant.

*Lemuel B. Schofield,* with him *W. Bradley Ward,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, January 29, 1942:

This controversy is between husband and wife. The latter filed a petition asking the court to determine the respective rights of herself and her husband under an antenuptial agreement which both had executed. This the court declined to do on the ground that remedy by declaratory judgment was not invocable. From this ruling the wife appeals.

Both of the parties had been married before. Each was possessed of property, real and personal. On their wedding day, just prior to the ceremony, they executed a formal typewritten agreement, carefully prepared, and an addendum thereto, in the handwriting of the husband.

By the formal sealed agreement prepared by a lawyer, each party releases all rights against the real and personal property of the other, which as surviving spouse he or she might have. The addendum reads as follows: "It is further agreed that the First Party [the husband] shall receive and accept from the estate of the Second

Party [the wife] the sum of $10,000.00 dollars in place and instead of all rights, which as surviving husband the First Party might otherwise have either as courtesy in the real property of the Second Party under any statutes now or hereafter in force and effect. The second party agrees that the sum of $10,000.00 dollars shall be fully paid to the first party if he shall survive her as soon after her decease as practicable."

The husband claims that as written, the addendum not only gives him $10,000.00 out of his wife's real estate, if he survives, but gives him such share, as he would take under the intestate law, of her personal property. This means that it wipes out and cancels the release of any such claim in the main agreement which he had simultaneously executed; that the mutual release is thereby nullified as to him, but stands so far as the wife is concerned. If she survives him, she can take none of his property, either real or personal.

It is obvious that the words as written do not accurately express the meaning and purpose of the parties. The word "either" is not connected with any alternative, as it necessarily must be, if it is to have any effect. The word "or" inserted between "party" and "under" would round out the sentence, so the phrase would read "either as courtesy in the real property of the Second Party *or* under any statutes now or hereafter in force and effect." It would seem that the word "or" had been inadvertently omitted. Where this is apparent, as we think it is, the clearly indicated missing word may be inserted: *Oleon v. Rosenbloom & Co.,* 247 Pa. 250, 93 A. 473; *Armstrong v. Standard Ice Co.,* 129 Pa. Superior Ct. 207, 195 A. 171.

If the words remain just as written, respondent can maintain no valid claim to anything beyond the $10,-000.00 from the real estate of his wife. Nothing is mentioned in the addendum about her personalty. It refers only to his courtesy rights in her real property. The two writings simultaneously executed should be read together

and this being done, they harmonize, the release of personal property remains effective and the release of real estate is modified to the extent of $10,000.00. It must be borne in mind that the addendum was written by the respondent, and this being so, construction must be strongly against him: *Ebbert v. Phila. Electric Co.*, 330 Pa. 257, 198 A. 323; *Reid v. Sovereign Camp Woodmen of World*. 340 Pa. 400, 17 A. 2d 890.

The court below did not pass upon the merits of the controversy, but dismissed the proceeding, on the ground that it does not come within the limits of our decisions on what is cognizable under the Declaratory Judgment Act. We think this may be true under certain of our rulings, not necessary now to be reviewed, because the 1935 amendment to the Act widens its scope, and we should give effect to this latest legislative declaration of the public policy on the matter. That amendment (Act of April 25, 1935, P. L. 72, Sec. 1, 12 PS Sec. 836) provides: "Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy exists between contending parties, . . . or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other

essentials to such relief are present, but the case is not ripe for relief by way of such common law remedy, or extraordinary legal remedy, or where the party asserting the claim, relation, status, right, or privilege and who might bring action thereon, refrains from pursuing any of the last mentioned remedies. . . ."

There can be no question that "an actual controversy exists between contending parties." The husband claims the right to share in the wife's personal estate if she predeceases him; she denies such right. She is in the position of not being able by will to dispose of her personalty with certainty, because of her husband's claim to a large part of it. We are "satisfied" that he "asserts a relation, status, right or privilege in which he has a concrete interest" which is challenged and denied by his wife, who "asserts a concrete interest therein" and we are "satisfied" also "that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding." No statute provides a "special" form of remedy for this "specific type of case." The fact that the controversy is susceptible of relief through some other remedy, does not debar declaratory judgment relief where, as here, the case is not ripe for relief by way of such other remedy, as it will not be until the wife dies. The Superior Court in *Grambo v. Southside Bank & Trust Co.,* 141 Pa. Superior Ct. 176, 14 A. 2d 925, has sanctioned a wider use of the declaratory judgment than theretofore prevailed. It has also done so in *Day v. Ostergard,* 146 Pa. Superior Ct. 27, 21 A. 2d 586. We conclude that the present controversy is one within the scope of a declaratory judgment proceeding, and that the court below was in error in deciding to the contrary.

In her petition, after setting forth the agreement and addendum, the wife states, that at the time her husband added the addendum, he orally represented to her, that by the execution thereof, he would be entitled to receive, if he survived her, only the sum of $10,000.00 from her real and personal estate, and that she executed the addendum in reliance upon this representation.

The husband, in his answer, sets up that a sister of petitioner, by reason of superior intellect and strength of personality, exercised great influence over her, and desiring to deprive him of his rights in her estate, and concerned in respect to his wife's intemperate and improvident manner of life, caused the agreement to be prepared, and insisted that his wife cause him to execute the agreement before marrying him. He avers that he did not agree with his wife, verbally or in writing, to release her estate, if she predeceased him, but that he refused to enter into such an agreement, although he was urged to do so by her at the urgent insistence of the sister. He states, that just prior to the marriage ceremony, he and his wife orally agreed that, if he survived her, he should be entitled to receive from her real estate the sum of $10,000.00, and that his right to claim his share of her personal estate should not be affected. He admits that he wrote the addendum; he says at her instance. (It is noteworthy that he did not put in it anything relative to his right in her personal estate.) He denies that he orally represented to his wife that the addendum gave him no rights in her personal estate and that she executed it upon such a representation.

It is contended on behalf of the husband that, if our opinion shall be that the proceeding as brought is proper, we should send the case back for hearing of evidence as to the oral understanding and agreement. Such evidence would be inadmissible, however, under the parol evidence rule of *Gianni v. Russell,* 281 Pa. 320, 126 A. 791, and the cases that have followed it.

It is further argued by him, that what his wife is seeking is reformation of the agreement. Not so, what is sought is construction of it. Reformation is not required.

We, therefore, decide that however the addendum be viewed, whether as written, or with the word "or" interpolated, respondent has no interest in or claim to the personal estate of his wife, if she shall predecease him,

and that his only valid claim is to $10,000.00 from her real estate. The court below will enter a judgment accordingly.

The decree of the court dismissing the proceeding is reversed at respondent's cost.

## ORDER.

In accordance with the stipulation filed by counsel for the appellant, it is directed that the judgment of the court below shall be so framed as to declare that the defendant, C. Howard Moore, in the event that he shall survive his wife, Margaret Dryden Moore, will be entitled to receive payment of Ten thousand Dollars ($10,-000.00) from her estate as a general creditor and without restriction of his claim for satisfaction to her real estate.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I agree with the dissenting opinion of Mr. Justice DREW that this court has heretofore consistently held as it did in *Kariher's Petition (No. 1)*, 284 Pa. 455, 472, 131 A. 265, that it "will not decide future rights in anticipation of an event which may not happen." The Uniform Declaratory Judgment Act has been adopted by at least twenty-five states. The courts of these states have uniformly refused to enter declaratory judgments on hypothetical facts. Plaintiff here asks for *an advisory opinion* on a contract which may never become operative. There are probably thousands of contracts in this jurisdiction as to whose rights and obligations the parties differ but it is no part of the duty of courts to render advisory opinions on these contracts before litigation concerning them is either actual or "imminent and inevitable".

Leading cases in *other jurisdictions* show judicial refusal to enter declaratory judgments on records such as this. The Supreme Court of Idaho said that the Act can be invoked only when the question "involves actual and

existing facts": *State ex rel. Miller v. State Board of Education* (1935), 56 Idaho 210, 52 P. (2d) 141. The Supreme Court of Colorado said: "This Act was not intended to repeal the statute prohibiting judges from giving legal advice nor to impose the duties of the profession on the courts, nor to settle mere academic questions": *Gabriel v. Board of Regents* (1928), 83 Colo. 582, 267 Pac. 407. The adjudication now made is based on "facts" which may never arise. As the court below well expressed it: "It is difficult to see how there can be an actual controversy between the parties or the ripening seeds of a controversy inasmuch as neither party will have any rights under the writing in question until one or the other is deceased. The rights of the parties have not accrued. It is only in the event that the plaintiff dies before the defendant that any question can arise."

The Supreme Court of North Dakota said: "An action or proceeding does not lie under the Declaratory Judgments Act to obtain a decision which is merely advisory or which merely determines abstract questions: *Langer v. State;* 1939, 69 N. D. 238, 284 N. W. 238." In *Tanner v. Boynton Lumber Co.,* 129 A. 617, 618, the New Jersey Court of Chancery aptly said: "To entitle complainants to have this court consider the situation set out in their bill and to render a declaratory judgment thereon, it should appear from the facts alleged that they have present rights against the persons whom they make parties to the proceedings, with respect to which they may be entitled to some relief." Plaintiff here has no *present rights* against respondent. Nor has he any present rights against her. She during her life-time is unrestricted in the disposal of her personal property, and *only in the events that (a) she dies before her husband and (b) leaves a personal estate, and (c) does not by will give him the equivalent of a husband's statutory interest in that estate,* can there be any legal controversy over the antenuptial agreement. At the present

time there is "no actual controversy existing between contending parties" *within the meaning of the Declaratory Judgment Law.* This husband and wife simply differ as to the interpretation of a contract and would like an advisory opinion on it from this court. If, for example, a husband made a will containing certain provisions for his wife and he and she differed in their lifetime in their interpretation of those provisions, that difference of opinion would not be an "actual controversy" in any legal sense. Should they go into court and ask an "advisory opinion" in the form of a "declaratory judgment" to settle their difference of opinion, the court would under all the decisions promptly inform them that the Declaratory Judgment Act was not intended to be used for any such purpose. A "controversy" in a legal sense is a conflict or clashing of *immediate* legal interests. It does not mean simply differences of opinion between two persons as to the provisions of certain contracts they have entered into. To have a controversy at law there must be lurking in the dispute or difference of opinion between the parties at least the likelihood of an imminent legal cause of action by one against the other.

The Supreme Court of the United States in *Aetna Life Insurance Co. v. Haworth,* 300 U. S. 227, 240, in defining the word "controversy" in the Federal Declaratory Judgment Act said, speaking through Mr. Chief Justice HUGHES: "A 'controversy' in this sense must be one that is appropriate for judicial determination. *Osborn v. United States Bank,* 9 Wheat. 738, 819. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. *United States v. Alaska S. S. Co.,* 253 U. S. 113, 116. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *South Spring Gold Co. v. Amador Gold Co.,* 145 U. S. 300, 301; *Fairchild v. Hughes,* 258 U. S. 126, 129; *Massachusetts v. Mellon,* 262 U. S. 447, 487, 488. It must be a real and substantial controversy admitting of specific relief

through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." (Citing numerous cases). In the instant case, no "specific relief" *can* be given for there is no immediate hazard to be relieved against. We are merely asked to advise "what the law would be upon a hypothetical state of facts"—a state of facts which is not in being and may never come into being.

The Declaratory Judgment Act has been applied to cases arising from the interpretation of contracts only where such a judgment serves to avoid a breach of contract which would result in an action for damages. Its function in cases arising from differences in the interpretation of contracts is to enable a party to avert penalties and forfeitures. When A is about to do an act that B challenges his right to do and A does not test the validity of the challenge, A runs the risk of breaking a contract, to his immediate detriment. When for A to act on his challenged interpretation of his contract is to invite an action for damages or some other penalty, the prudent thing for him to do is to ask for a declaratory judgment on the legal question presented by the conflicting interpretations. For example in *Girard Trust Co., Agent, v. Tremblay M. Co.*, 291 Pa. 507, 140 A. 506, a three-story *non*-fireproof building was destroyed by fire. An act passed after the date of the lease prohibited the erection of *non*-fireproof buildings of a height greater than two stories to be used as was, in this instance, the building destroyed. The tenant demanded that the landlord erect a three-story fireproof building or a two-story building with abatement of rent. The landlord offered to erect either a two-story fireproof building or a three-story *non*-fireproof building at the same rental. The tenant knew he could not use a three-story *non*-fireproof building for the same purpose he had used the building destroyed because the act above referred to forbade its use for that purpose (i. e., for automobile sales and a

service station). This situation presented a controversy calling for the immediate interpretation of the lease contract between the parties. The court said (p. 524) : "In a case like the present, by proceeding according to the Declaratory Judgments Act, the parties avoid the necessity of first actually erecting a building in order to be in a position to obtain a judicial construction of their respective rights and liabilities."

In the leading English case of *Societe Maritime et Commerciale v. Venus Steam Shipping Co., Ltd.,* 9 Com. Cas. 289, plaintiffs had undertaken by contract to load ore on steamers to be furnished by one L, the alleged assignor of the defendants for five years. Plaintiffs contended that there was no valid assignment to the defendants, that L was not the defendants' agent, and that there was no novation. As the original contract had over a year to run and as plaintiffs did not wish to break it and so subject themselves to an action for damages, they asked the court for a declaration that the contract was no longer binding on them. The court said: "They are entitled to a declaration as to whether or not the contract is binding upon them. They are not bound at their peril to refuse to perform it and then to be liable to heavy damages for not performing it for the space of the next year and a half." In a Kansas case the plaintiff school district claimed release from a written guaranty to provide school rooms, because the legislature had by the creation of a community high school relieved much property from taxation and by this change of conditions justified the plaintiff's release: *School Dist. No. 19 of Sheridan County v. Sheridan Community High School,* 130 Kan. 421, 286 Pac. 230 (1930).

In all these cases and others like them where the right to a declaratory judgment has been upheld, the plaintiff sought an escape from the imminent peril of an action for damages or some other hazard if he acted on his interpretation of the contract between him and another. It is a plaintiff's reasonable fear of possible damage to him-

self which may arise from his contemplated act which clothes him with that legal interest which makes his case justiciable in declaratory judgment proceedings. For example, in *Brokaw v. Fairchild,* 237 N. Y. Supp. 6 (1929), the plaintiff, a life tenant of an old-fashioned New York residence, sued the remaindermen and trustee for a declaratory judgment that he was privileged to demolish the building, which had become outmoded in that neighborhood, and to erect an apartment house which would pay an income for the benefit of all concerned. The defendants contended that such demolition would be waste, that the other members of the family had received residences in the neighborhood, and that it would spoil the plottage value of the property. In denying the declaration sought, the court saved the plaintiff from the danger of acting on his own mistaken view of his rights, and removed all uncertainty from the legal position of all parties. In *Hess v. Country Club Park,* 213 Cal. 613, 2 Pac. (2d) 782, the Supreme Court of California said in a case in which a covenantor in a deed sought to obtain a declaration of his privilege to depart from the restriction: "If such a declaration is refused, the plaintiff is put in the hazardous position of being obliged to violate the terms of the restriction before he can know whether or not he must suffer the penalties mentioned". In *Evangelical Lutheran Church v. Sahlem,* 254 N. Y. 161, 172 N. E. 455, a church had claimed it was free to build a church edifice in disregard of a restriction limiting the use of the land to residential purposes. One person in the neighborhood objected. The church had begun to break ground for the edifice but before proceeding further with the work, it thought it expedient to sue the objecting covenantee for a declaration as to its privilege to build. The court below sustained its claim of right; the Court of Appeals denied its claim, but in doing so Chief Judge CARDOZO for the court commended the church's caution in asking for a declaratory judgment before incurring the legal damages for breach of cove-

nant which its action would have entailed. Judge CAR-
DOZO said: "Here is no case of irreparable hardship,
shocking to the conscience, as where a mandatory in-
junction would destroy a finished building to vindicate
a doubtful right."

In the instant case the plaintiff runs no risk in
doing whatever she pleases with her property in reliance
on her own interpretation of her ante-nuptial contract.
No matter how that contract is interpreted, her freedom
of legal action is in no way curtailed by it and she runs
no risk of incurring any damages or other penalties.
True it is that it may be very *convenient* for her to know
in advance whether under that contract her husband *if
he survives her* can claim any interest in her personal
estate; so it would be equally convenient for any per-
son who is about to make a will disposing of his estate
to know in advance whether after his death his estate
will be depleted or not by reason of certain contracts he
has entered into and whose meaning has become doubt-
ful to him, but the Declaratory Judgment Act was never
intended to drive the courts into these limitless fields
of *advisory judgments*. The later Act of April 25, 1935,
P. L. 72, was clearly not intended to force courts into
that field, which they refused to enter under the Act of
June 18, 1923, P. L. 840. The Act of 1923 uses language
which, like that in the Act of 1935, *might* be construed
by some as warranting what plaintiff asks for, but the
decisions and opinions of this court make it plain that
we cannot constitutionally enter the field of advisory
opinion no matter how broad the language of the statu-
tory invitation may superficially seem to be. The Act of
1923, sec. 2, says: "Any person interested under a deed,
will, written contract . . . or whose rights, status, or
other legal relations are affected by a statute . . . con-
tract, or franchises may have determined any question
of construction or validity under the instrument . . .
and obtain a declaration of rights, status or other legal
relations thereunder." Plaintiff can plausibly argue that

she is a "person interested under a contract" and that her "rights or status are affected by that contract" and that therefore she is entitled under the Act of 1923 to have from this court "a declaration as to her rights or status under that contract" but the answer to that argument is found in *Kariher's Petition,* supra, and numerous other decisions of this court. The argument that plaintiff is entitled to a judicial declaration as to her rights *under the Act of 1935* also readily admits of an answer. First of all, there is no *"actual controversy"* existing between this plaintiff and the respondent, when we give to the word "controversy" its legal and proper meaning. There is existing between these parties a *difference of opinion* as to the import of their contract but this difference does not rise to the dignity of a legal *controversy* any more than do thousands of other similar differences of opinion as to the import of contracts. There is no certainty that the "difference of opinion" here existing will ever ripen into a legal controversy. Second, there are here present no "antagonistic claims" between the parties "which indicate *imminent and inevitable* litigation". There is no chance whatever for litigation between these parties over this contract while *both* are alive, and if the husband dies before the wife or if the wife dies before the husband and leaves no personal estate, there can be no litigation of any kind over this contract. There is therefore no warrant whatever for the claim that litigation over this contract is *"imminent* and *inevitable".*

Anderson on Declaratory Judgments on page 172 says: "Under the declaratory judgment law, a former wife is not entitled to a declaration of rights under a contract, assignment, and transfer relating to the former husband's interest in land on the ground it was necessary to protect the rights of herself and minor child in the event the husband should, at some future time, default in alimony payments, *there was no necessity for making such a declaration based upon such a remote fu-*

*ture contingency"* [italics supplied]. Citing the following case, *Merkley v. Merkley et al.,* 86 Pac. (2d) 89, 91, 12 Cal. (2d) 543, the Supreme Court of California said: ". . . the situation has not developed which would require a construction of any instrument introduced in evidence and relied on by the plaintiff. There is no more than a conjecture or supposition on her part that *at some time in the future a controversy may arise where-in she might become interested* in having adjudicated the defendant Alan Merkley's interest under those documents. The facts in the record present an academic question only. The courts will not exercise the discretionary power to declare rights which do not give rise to a present controversy."

In *Malick's Petition,* 133 Pa. Superior Ct. 53, 59, 60, the Superior Court of Pennsylvania refused to enter a declaratory judgment, saying in the opinion of Judge CUNNINGHAM: "What the intervenor really sought, . . . was, in effect, a declaratory judgment or adjudication of her possible rights in the future. . . ." In *Corken v. Workman,* 231 Mo. App. 121, 98 S. W. (2d) 153, the Appellate Court of Missouri said: "Lapse of time may create conditions which may cause controversy involved in case to become mere moot question which courts will not decide." In *Allison v. Sharp,* 209 N. C. 477, 184 S. E. 27, the Supreme Court of North Carolina said: "Action is not maintainable under this Declaratory Judgment Act for determination of theoretical problem or moot questions".

Nor is there any ground for the court to be satisfied that either party to this bill for a declaratory judgment "asserts a legal relation, status, right or privilege in which he has a concrete interest" denied by the other who "has or asserts a concrete interest therein" (quoting from the Act of 1935, P. L. 72). There is nothing *"concrete"* about an interest such as the husband here asserts, an interest which though the ante-nuptial contract should be interpreted as he contends, will be totally with-

out value to him except under two contingencies which may never arise, to wit: The wife shall predecease him and, second, she shall leave a personal estate. The best test of the *lack* of "concretenes" in the husband's claim (even under his own interpretation of the contract) would be for him to attempt to sell that claim in the market place and see how little it would bring. Anyone buying it would be buying not something of *concrete* value but something of a purely *speculative* and *doubt-ful* value. The adjective concrete is defined in Webster's New International Dictionary, 2 ed. as "characterized by immediate experience of realities, belonging to actual things or events, real, not abstract." The noun "concrete" is defined as "opposed to *in* the *abstract.*" "In the ab-tract" is defined as "with reference to theoretical con-siderations only, apart from practical or actual condi-tions". In the light of these definitions it is clear that the husband is claiming something not concrete but ab-stract. His interest in the ante-nuptial contract will *become* concrete, i. e., substantial, only under actual con-ditions which do not now exist and which may never exist.

This is precisely the view Judge GEST of the Orphans' Court of Philadelphia took in the case of *Straus' Estate,* 307 Pa. 454, 457, 458, 161 A. 547, in which this court af-firmed the refusal of the court below to render a declara-tory judgment. This affirmation was on Judge GEST's opinion in which he said, inter alia: "The Declaratory Judgment Act can only be invoked where a real contro-versy exists: *Lyman v. Lyman,* 293 Pa. 490; *Sterrett's Est.,* 300 Pa. 116, and *Cryan's Est.,* 301 Pa. 386, and the court will not decide future rights in anticipation of the event at which such future rights call for decision: *Lad-ner v. Siegel,* 294 Pa. 368. . . . Doubtless it would be more convenient for the executors to have us construe the will in advance, but this is by no means an adequate reason."

In *Bunnell v. Gordon,* 20 O. R. 281, the High Court of Justice of Ontario affirmed a refusal of the court below to entertain a petition seeking a declaration that plaintiff was entitled to an inchoate right of dower in certain lands. *In re Lockyer* [1934], 1 D. L. R. 687, in dismissing a charity's petition for a declaration that it was entitled to a share of the remainder under a will bequeathing income to testator's daughter for life and the principal after payment of her debts and funeral expenses to named charities, the Chief Justice of Ontario said (p. 688) : "Such debts and funeral expenses may exhaust the whole fund in which event the charities take nothing. . . . The Court should not now entertain what may prove to be purely an academic question. . . . Appellant points to no special circumstances warranting an immediate decision, other than the necessity of making two wills, a hardship hardly meriting our assistance, and no present rights depend on the declaration, *because she is now in no way restricted in the management and inter vivos disposition of her personal estate*" (italics supplied). The excerpt we italicize perfectly expresses the situation in the case now before us.

The language of Mr. Justice Linn in reversing in *Carwithen's Est.,* 327 Pa. 490, the action of the Orphans' Court of Philadelphia County which had entered a declaratory judgment, can be used with appropriateness in disposing of the case now before us : "There is no actual controversy; there may be one some day" if the plaintiff predeceases her husband, leaves a personal estate and does not will him an interest in that estate equal to what the intestate laws would give. "The circumstances" existing at the time of plaintiff's death "cannot be anticipated and without them there is no 'actual controversy' on the point; the record [now before us] does not present antagonistic claims indicating 'imminent and inevitable litigation'. The parties may differ on what the ante-nuptial agreement means but that is not enough to support the declaration" the plaintiff asked for and which the court below refused.

Appellant's paper book quotes the following from Borchard on Declaratory Judgments, 2nd ed., p. 414: "Security in legal relations is desirable" and "the need for certainty as to prospective rights and duties has long been felt". These express commendable ideals of doubtful attainability, which it is certainly *impracticable* to attain through the medium of declaratory judgments.* Borchard in these words just quoted obviously did not mean to advocate the use of declaratory judgments in cases like this, for in the very same paragraph he says: "Planning for the future requires the opportunity to ascertain and to determine the effect of relations and events *certain or practically certain to arise in the future*" [italics supplied]. That this plaintiff will predecease her husband or that if she does predecease him she will leave a personal estate, are *not* events "certain or practically certain to arise in the future". Borchard also says (pp. 34 and 35): "Expediency and a desire not to function in the abstract, but to decide only concrete contested issues conclusively affecting adversary parties in interest, have induced a refusal to render advisory opinions or decide moot cases. . . . Actions or opinions are described as 'moot' when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they

---

* Some years ago certain persons urged that the Supreme Court of the United States be required to advise Congress *in advance* as to the constitutionality of pending legislation, but the proposal to make the Supreme Court a professional adviser to Congress was so strongly condemned by jurists and lawyers that little or nothing has since been heard of it.

In 1793 the then Chief Executive of the United States formally requested the Supreme Court of the United States to advise him on twenty-nine questions relating to international law. After duly considering the request for about one month the judges of the United States Supreme Court "decline to give their opinion on these questions of law . . . with great firmness, though with due deference": Warren's "Supreme Court in United States History", Vol 1, pages 109, 110.

involve no actual, genuine, live controversy, the decision of which can definitely affect existing legal relations."

The Supreme Court of North Carolina aptly declared: "The Uniform Declaratory Judgments Act 'does not extend to the submission of a theoretical problem or a "mere abstraction". It is no part of the function of the courts, in the exercise of the judicial power vested in them by the Constitution, to give advisory opinions, or to answer moot questions, or to maintain a legal bureau for those who may chance to be interested, for the time being, in the pursuit of some academic matter' ": *Poore v. Poore* (1931), 201 N. C. 791, 161 S. E. 532.

The interest here asserted by the husband and which caused the wife to file the petition before us is *abstract, not concrete;* we have on this record a difference of opinion but no *controversy* rating judicial recognition; the facts are *not* "sufficiently proximate and ripe" to place the adversaries "in gear" (as Borchard on p. 50 phrases it). The question posed is academic and its answer will have no practical legal result; the judgment asked for would not affect in the slightest degree the wife's lifetime rights in her personal property; neither she nor her property are thrown into danger or jeopardy by her denial of her husband's present interpretation of an antenuptial contract which he may never have occasion to attempt to enforce, and it is only when a party is "thrown into jeopardy and danger by the threat or attack" that he or she has a sufficient legal interest to obtain a declaratory judgment (see Borchard p. 280); the "issue" is framed on facts *not now existing* and *which may never exist* and it is elementary that a declaratory judgment must deal with a real dispute over real facts; here there is *no* threat of "imminent and inevitable" litigation between parties; all the "facts" pleaded as a ground for this declaratory judgment are *hypothetical* and courts never determine the rights of parties on a state of facts which have not yet and may never come into being; the

"case" before us is a perfect example of a moot case and should be judicially dealt with accordingly.

I would affirm the decree of the court below.

Mr. Justice PATTERSON concurs in this opinion.

DISSENTING OPINION BY MR. JUSTICE DREW:

Appellant asks for a construction of a written antenuptial contract to determine whether by its terms her husband has released his intestate rights in her personalty. The primary question is whether the facts present a controversy susceptible of determination under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended. The learned court below held they did not, and this appeal followed.

In conformity with the general principle that courts do not pass upon moot cases (*Winston v. Ladner,* 264 Pa. 548; *Faust v. Cairns,* 242 Pa. 15), because the effect of so doing would be to give an advisory opinion binding no one, we laid down the rule in *Kariher's Petition (No. 1),* 284 Pa. 455, 472, that "in a declaratory judgment proceeding the court will not decide future rights in anticipation of an event which may not happen, but, just as in the ordinary executory action, it will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision, as, for instance, where present rights depend on the declaration sought by plaintiff . . ." This rule has been consistently followed: *Straus' Estate,* 307 Pa. 454, 457-8-9; *Sterrett's Estate,* 300 Pa. 116, 123-124; *Pittsburgh's Consolidated City Charter,* 297 Pa. 502, 505-6-7; *Reese v. Adamson,* 297 Pa. 13; *Lyman v. Lyman,* 293 Pa. 490, 495-496; *Brown's Estate,* 289 Pa. 101, 122-123. In the instant case the possible litigation depends absolutely on two contingencies: that appellee survive appellant, and that appellant does not part with all her personalty during her lifetime. Either of these is sufficient to render the question unjusticiable. Appellant points to no special circumstances warranting an immediate decision, and no present rights depend on the declaration, because

she is now in no way restricted in the management and inter vivos disposition of her personal estate.

The majority asserts, however, that the Amendment of April 25, 1935, P. L. 72, to the Act widens the scope of the declaratory judgment remedy, and authorizes its use in three alternative situations:

(1) Where an actual controversy exists *or*

(2) Where antagonistic claims are present which indicate imminent and inevitable litigation *or*

(3) Where *in any such case* one party asserts a legal relation or status which is denied.

The majority insists that where one party asserts a legal relation or status which is denied, the court may make a declaration even though there is no actual controversy and litigation is not imminent and inevitable. If this construction is correct, the first two alternatives are entirely meaningless. Admittedly the third is obscure, but it does include the first two because the word "where" is followed by the words "in any such case", which definitely refers to the first two situations. The analysis of the majority in no way attempts to explain this contradiction of its position. There was a reason for the passage of the Amendment, and it was not to destroy the original Uniform Declaratory Judgments Act, but to correct errors in judicial interpretation and bring the Act back to its original meaning. Professor Edwin M. Borchard, an authority on the subject, who was a co-draftsman of the Uniform Declaratory Judgments Act and of the Federal Act, in an article entitled "Recent Developments in Declaratory Relief" (10 Temple L. Q. 233, 1936) (and in his treatise on Declaratory Judgments, 1941, p. 318 et seq.) states that the Uniform Declaratory Judgments Act was originally intended to provide an alternative remedy to be available even though there was already an existing common law or equitable remedy, though not if there were an existing statutory remedy, and that the rule to this effect laid down in *Kariher's Petition,* supra, was subsequently departed

from in *Leafgreen v. La Bar,* 293 Pa. 263; *Nesbitt v. Manufacturers' Casualty Ins. Co.,* 310 Pa. 374, and *Bell Telephone Co. v. Lewis,* 313 Pa. 374. To correct this error, says Professor Borchard, and to bring the Act back to its original meaning, Chief Justice von MOSCH-ZISKER, after retirement from the bench, drafted the amendment in question.

Professor Borchard views the amendment as expressing in precise detail the rules of *Kariher's Petition,* supra, which he considers a good statement of the essential requisites of a declaratory judgment (10 Temple L. Q. at p. 233). With respect to the justiciability of the controversy he says in his treatise (p. 37) that the plaintiff's interest "must be present, and not contingent, though it may be presently affected or jeopardized by a future event certain to occur." And concerning ripeness of the issue he states (pp. 56-7, 60) : "When are the facts sufficiently developed to admit of a conclusive adjudication, and when are they so contingent and uncertain as to justify a refusal to decide? Again, no *a priori* answer is possible. The only safe guide is an analysis of the precedents in which declaratory judgments have been granted and declined. In general, it may be said that the facts on which a legal decision is demanded must have accrued, for the principle of a declaratory judgment is that it declares the existing law on an existing state of facts. The danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events—although it may involve future benefits or disadvantages—and the prejudice to his position must be actual and genuine and not merely possible or remote. When the complaint on these tests is considered premature, the dismissal may be explained by any one of a series of labels, *e. g.,* that there is as yet no 'controversy', that the issue is hypothetical, that the result would be only an advisory opinion, etc. Where the plaintiff is merely in doubt as to his rights under a written instrument, such as a will, and there is either no one who dis-

putes the claim or else some event must happen before the plaintiff's right fully accrues, the action is naturally considered as prematurely brought. . . . The imminence and practical certainty of the act or event in issue, or the intent, capacity, and power [of a debtor-plaintiff] to perform, create justiciability as clearly as the completed act or event, and is generally easily distinguishable from remote, contingent, and uncertain events that may never happen and upon which it would be improper to pass as operative facts. Again, where it appears that acts within the plaintiff's own control may make the decision academic, the court in its discretion may decline a declaration" (citing *Lyell v. Cormack,* 40 B. D. 345). And on page 81, n. 18: "Actions for declarations are occasionally brought upon an assumed state of facts or before all the facts upon which rights depend have yet accrued; the facts posited may never arise and are therefore contingent or uncertain. Under such circumstances, courts are justified in refusing to render declaratory judgments on the ground that they are not ripe for such judgment, the effect of which would be essentially that of an advisory opinion." These quotations from Professor Borchard fit the instant case exactly. See also, Borchard, Declaratory Judgments in Pennsylvania, 82 U. of Pa. L. Rev. 317, 330-31. Although he has, for at least twenty-five years, advocated the extension of the scope of the declaratory judgment remedy (see his first articles in 28 Yale L. J. 1-32, 105-150), he nowhere suggests that it be applied to contingent claims or moot cases, and cites no decisions so doing.

In *Kariher's Petition,* supra, we said (p. 471) that an actual controversy must exist and that we would not decide future rights in anticipation of an event which might not happen. And where the court of first instance has in the exercise of its discretion assumed jurisdiction and entered the decree, we have reversed and held that the petition showed no actual controversy because the threatened litigation was not inevitable: *Sterrett's Es-*

*tate,* supra; *Pittsburgh's Consolidated City Charter,* supra; *Lyman v. Lyman,* supra. When the courts have put a particular construction upon certain words, and the legislature later uses those words in a statute, they are to be given the construction already placed on them: Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, par. 52 (4); *L. Nazareth Twp. Supervisors' Appeal,* 341 Pa. 171, 175; *United States v. Burr,* 4 Cranch 470, 471. Therefore, the requirements of an actual controversy and imminent and inevitable litigation, which the court followed before the 1935 Amendment, should continue to be applied unless the Amendment proceeds to enlarge the scope of the words or remove former restrictions on them. No such expressions are to be found in the Amendment. There is no "actual controversy" in any legal sense or "imminent and inevitable litigation", visible in the instant case.

After the passage of the 1935 Amendment we continued to adhere to the rule that contingent rights will not be adjudicated in declaratory judgment proceedings: *Kahn v. Wm. Goldman Theatres, Inc.,* 341 Pa. 32; *Capital Bk. and Tr. Company's Petition,* 336 Pa. 108; *Quigley's Estate,* 329 Pa. 281; *Carwithen's Estate,* 327 Pa. 490. In *Carwithen's Estate,* supra, we said, relative to a trustee's petition to determine whether a will authorized certain investments opposed by the beneficiaries (p. 493): "Petitioners now desire a decision of what in some future proceeding may or may not be a subordinate question. It is easy to see that in some circumstances such a question cannot arise, and that in others in which it may arise, the facts on which it may then be presented cannot be anticipated. The contingent character of the circumstances presented by petitioners takes the case out of the class in which the court will enter declaratory judgments. The court is not vested with jurisdiction to give advice merely: *Cryan's Estate,* 301 Pa. 386, 391, 152 A. 675." After quoting the Amendment in question, we continued (p. 494): ". . . We think there is nothing

on this record to sustain a declaration; there is no actual controversy; there may be one some day if the trustees fail in the measure of their duty with resulting loss; but the circumstances cannot be anticipated and without them there is no 'actual controversy' on the point; the record does not present antagonistic claims indicating 'imminent and inevitable litigation'. The parties may differ on what the will means, but that is not enough to support the declaration made." In *Quigley's Estate,* supra, we said in reference to this and another amendment passed in the same year (Act of May 22, 1935, P. L. 228), (p. 294) : "These acts, however, still leave to the court the discretion to render declaratory judgments or decrees only where it is convinced 'that such a judgment or decree is appropriate and proper to be entered,' and is satisfied that antagonistic claims are present 'which indicate *imminent* and inevitable litigation.' " In *Capital Bk. and Tr. Company's Petition,* supra, in which a trustee sought a declaration of its authority to make a lease of mortgaged premises and to subordinate the lien of the mortgage to the proposed lease, we said in reversing a decree granting the relief prayed for (p. 111) : "As we have stated before, the vital factor in the assumption of jurisdiction is the presence of antagonistic claims indicating imminent and inevitable litigation, coupled with a clear manifestation that the declaration sought will be a practical help in ending the controversy: *Reese v. Adamson,* 297 Pa. 13; *Carwithen's Estate,* 327 Pa. 490. Tested in the light of the foregoing principles, the present petition fails to support the relief there sought. Rather it is an attempt to get the court to decide future rights in anticipation of an event which may not happen . . ."; and on page 112: "Here it might well happen that there never will be litigation." And recently in *Kahn v. Wm. Goldman Theatres, Inc.,* supra, where plaintiff sought to determine whether her realty was still subject to an option to purchase held by defendant, though she was not under con-

tract to sell to any one else, we reiterated our former views (p. 35) : "Plaintiff attempts in this action to get the court to decide future rights in anticipation of an event which may never happen. She does not present 'an actual controversy, or the ripening seeds of one' which is essential to obtaining the declaration sought: *Kariher's Petition (No. 1)*, 284 Pa. 455, 471." And after quoting the amending acts, we continued: "All that plaintiff avers is that the option granted to defendant under the covenant contained in the deed has expired in her and her counsel's opinion, and, while defendant or its attorney may not concur with them in that belief, there is no allegation that defendant has asserted any claim or hinted at the possibility of litigation, or that plaintiff has taken any action or is contemplating taking any steps which would be in any way affected by what defendant thinks. If and when the differences of opinion between counsel and their clients become something more than that, the court may act . . . there is no actual controversy, at this juncture, between the parties, and the court is, therefore, without authority to affect their rights under the terms of the deed. Any opinion in the present state of the record would be merely advisory in nature; and such opinions are not contemplated under this legislation: *Ladner v. Siegal,* supra, 372; *Cryan's Estate,* 301 Pa. 386, 391."

In the only cases relied on by the majority, *Grambo v. South Side Bank and Trust Co.,* 141 Pa. Superior Ct. 176, and *Day v. Ostergard,* 146 Pa. Superior Ct. 27, no contingency existed to threaten the inevitability of the litigation, all the facts fixing the parties' right having already occurred. While these cases may hold that the 1935 Amendment sanctioned a wider use of the declaratory judgment procedure where there is already another established remedy, they in no way purport to broaden its scope where litigation is not inevitable. They are, therefore, not in point. The majority opinion in effect authorizes any party to an executory contract before

breach to have his rights determined whenever there is a difference of opinion as to the meaning of a written instrument, and makes it reversible error for a court in its discretion to refuse to do so. This is contrary to the whole theory of declaratory judgments.

For these reasons, and those stated in the dissenting opinion of Mr. Justice MAXEY, I would affirm the court below in dismissing the petition. To assume jurisdiction on the facts presented, as the majority does, is to open the gates to a flood of litigation of an advisory nature upon controversies which may never arise.

Mr. Justice PATTERSON joins in this dissent.