**Roban Construction, Inc. v. Housing Authority of City of Hazleton**

*Joseph A. Quinn, Jr.,* for plaintiff.

*Pasco L. Schiavo,* for defendant, housing authority.

*Bruce D. Lombardo,* for defendants Bellante, Clauss, Miller & Nolan.

HOURIGAN, J., June 12, 1974.—This case comes before the court on preliminary objections to plaintiff's complaint. The Housing Authority of the City of Hazleton and Bellante, Clauss, Miller & Nolan, each filed separate preliminary objections in the nature of a demurrer, a motion to strike and a motion for more specific pleading.

Defendant housing authority in its demurrer states:

"4. Plaintiff's complaint in both assumpsit and trespass fails to state a cause of action because it fails to connect or attach any injury to the alleged acts of the defendant Authority."

Defendant architects separated their objections as to assumpsit action and trespass action: (1) As to assumpsit actions, defendants allege that there was no contract between plaintiff and defendant architects; and (2) as to trespass actions, defendants allege that plaintiff failed to set forth any facts alleging defendant owes a common-law duty which it breached.

Plaintiff's complaint contains seven counts. From a review of the first count, the following appears:

On or about February 27, 1968, plaintiff, Roban Construction, Inc., a general contractor, entered into a contract with defendant, housing authority, for construction of a building and dwelling known as Hazleton Housing Project, Project PA. 44-1. Defendant, Bellante, Clauss, Miller & Nolan were the designated architects on said contract, and were acting as the agent, servant and employe of the authority and within the scope of its employment with the authority. During the course of its work, plaintiff discovered that there were latent physical soil conditions which differed from those indicated in the contract. Plaintiff notified defendants of these conditions on May 27, 1968, and requested change orders. Apparently, there were questions relative to the validity of the claim of the latent soil conditions and no approval of change orders was obtained for two years. During this time, plaintiff repeatedly requested defendant, housing authority, to make a decision. Plaintiff asserts that delay was unreasonable and was a breach of contract which caused plaintiff to lose the use of working capital, and claims as damages interest on the working capital.

Count II, a trespass claim which incorporates most of the allegations in count I, alleges a duty to approve changes in reasonable time, and breach of that duty, claiming the same damages as in count I. Counts III and IV are similar to the first two counts except each relates to a change order for curbing and sideways to comply with the Hazleton City Building Code, and count IV alleges architects were negligent in preparing plans and specifications containing differences from the Hazleton Building Code.

Counts V and VI are also similar as I and II except that they refer to a change order for a water distribu-

tion system and sanitary systems, and, additionally, allege that defendants' plans were inadequate and that defendants failed to exercise due care in drafting said plans because said plans did not comply with requirements of the sewer and water authorities of the city. However, plaintiff's claim for damages on these counts includes claim for loss on contract, loss of profits, loss on two concurrent contracts, loss of bonding capacity, and loss of reputation. Count VII is solely against the housing authority alleging completion of contract and failure to make final payment claiming loss of interest and bonding capacity as damages.

## DEMURRER—HOUSING AUTHORITY

As one of its reasons for its demurrer to plaintiff's complaint, defendant, housing authority, states:

"No. 4. Plaintiff's complaint in both assumpsit and trespass fails to state a cause of action because it fails to connect or attach any injury to the alleged acts of the defendant Authority."

Plaintiff's complaint in counts I and II alleges delays in approving the change orders for latent soil conditions and the acts of the authority which caused it.

Section 10(c) (p. 32) of the contract with the authority (attached as Exhibit "a" to the complaint) states:

"Except in an emergency endangering life or property, no change shall be made by the Contractor unless he has received a prior written order from the Local Authority, approved on its face by the PHA, authorizing the change, and no claim for an adjustment of the Contract price or time shall be valid unless so ordered."

The above contract provision requires any change order in the contract to be approved by the PHA (defined as Public Housing Administration under the

contract), not defendants. In addition, paragraphs 18 and 22 of plaintiff's complaint quote minutes of the housing authority showing that defendant was indeed in contact with HUD (PHA) discussing the merits of approval of the change orders.

"Where any inconsistency exists between the allegations of a complaint and a written instrument, to-wit, the contract documents in this case, the latter will prevail and in this context a demurrer does not admit the truth of averments in a complaint conflicting with the exhibits." Framlau Corp. v. Delaware Co., 223 Pa. Superior Ct. 272, 277 (1972).

Plaintiff claims any unreasonable delay in approval of change orders constituted a breach of contract or breach of duty by defendant housing authority. Assuming that the delay in approving the change orders was unreasonable, there is no allegation that the delay was the fault of defendant or that it was within defendant's control.

"A cause of action does not consist of fact, but of the unlawful violation of a right which the facts show . . . 'The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. "The *thing*, therefore, which in contemplation of law as its *cause*, becomes a ground for action, is not the group of *facts* alleged in the declaration, bill, or indictment, *but the result of these in a legal wrong, the existence of which, if true, they conclusively evince." '* Chobanian v. Washburn Wire Co., 33 R. I. 289, 302, 80 Atl. 394, Ann. Cas. 1913D, 730". Baltimore S.S. Co. v. Phillips, 274 U.S. 316 (1927).

Since plaintiff has not pleaded that defendant committed any wrong with respect to change orders, it has not alleged a cause of action in counts I or II of its complaint and the demurrer must be sustained as to those counts.

Count III contains allegations similar to count I but alleges that the change order was necessary to comply with the City Building Code. In count IV, the trespass counterpart to count III, plaintiff alleges, in addition to delay in approving change orders, negligence of defendant's architects in preparing plans and specifications which did not comply with the Hazleton City Building Code.

Counts V and VI are similar to counts III and IV. However, in counts V and VI plaintiff alleges that the plans and specifications were inadequate, and the failure to exercise due care in drafting of plans and specifications. There was a delay in these counts in obtaining change orders to meet the requirements of the water and sewer authorities.

In this opinion, on counts I and II we have determined that the allegation of the failure to approve change orders does not state a cause of action against the authority and we now must consider whether the failure of the original plans and specifications to meet requirements of the city code and authority's was a breach of duty.

Paragraph 23(a) (p. 42) of the contract states:

"23. PERMITS AND CODES

"a. The Contractor shall give all notices and comply with all applicable laws, ordinances, codes, rules and regulations. The intent of this Contract is that the Contractor shall base his bid upon the Drawings and the Specifications but that all work installed shall comply with all applicable codes and regulations as amended by any waivers. Before installing the work, the Contractor shall examine the Drawings and the Specifications for compliance with applicable codes and regulations bearing on the work, and shall immediately report any discrepancy to the Local Authority. Where the requirements of the Drawings and the Specifications fail to comply with the applicable

code or regulation, the Local Authority shall adjust by change order the Contract to conform to the code or regulation (unless waivers in writing covering the differences have been granted by the governing authority) and shall make appropriate adjustment in the Contract Price. Should the Contractor fail to observe the foregoing provisions and install work at variance with any applicable code or regulations as may be amended by waivers (notwithstanding the fact that such installation is in compliance with Technical Specifications), the Contractor shall remove such work without cost to the Local Authority, but a change order shall be issued to cover only the excess cost the Contractor would have been entitled to receive if the change had been made before the Contractor commenced work on the items involved."

The above provision places the responsibility on plaintiff contractor, not defendant authority or its agent, to determine what the applicable code and regulations are and whether plans and specifications comply with the requirements. Plaintiff contractor was, by virtue of the contract provisions, given notice that plans and specifications may not comply and defendant did not assume any duty or responsibility if plans did not comply other than to adjust by change orders (which requires PHA approval).

"In interpreting contracts, as in interpreting wills, the guide to intentions is the terms used unless they are ambiguous. The respective rights and obligations which the words of a contract clearly express are the rights and obligations which the courts must recognize and enforce": Moore v. Stevens Coal Co., 315 Pa. 564, 569 (1934).

A court is required to enforce a contract as the parties wrote it: Peter J. Mascaro Co. v. Milonas, 401 Pa. 632 (1960).

Since plaintiff's pleading conflicts with its con-

tract, the contract controls and demurrer does not admit averments which are in conflict with it: Framlau Corp. v. Delaware Co., supra.

In view of the foregoing provision, plaintiff has not alleged breach of contract or duty, since plaintiff itself assumed the responsibility of determining code and regulations requirements, not defendants, and has not alleged a cause of action against the authority in counts III to VI.

In addition, we point out that the change order approvals which plaintiff signed state that all claims which are incidental to or as a consequence of the aforementioned changes are satisfied.

And that section 13(b), (p. 36) of the contract provides:

"(b) No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable."

Plaintiff has not alleged any facts which would make the above release and contract terms inoperable as to it. To be able to recover, plaintiff must be able to show that the above contract provisions and its releases are unenforceable.

" 'Where the language is plain and unambiguous, the rights of the parties must be determined by the provisions of the instruments wherein they committed their agreement in writing' ": Jacob Siegel Co. v. Phila. Record Co., 348 Pa. 245, 248 (1944).

Count VII of plaintiff's complaint is solely against defendant, housing authority, and alleges that plaintiff has completed all work required under the contract and shortly thereafter should have received final payment. Plaintiff has since demanded payment which defendant, housing authority, has refused.

Section 9(d), (p. 30) of the contract attached to the complaint provides the requirements for final payment as follows:

"d. Upon completion and acceptance of all work required hereunder (exclusive of lawns and planting), the amount due the Contractor under this contract, exclusive of the retention for lawns and planting work specified in the Special Conditions, shall be paid upon certification by the Architect and approval by the Local Authority and the PHA of all work exclusive of lawns and planting, after the contractor shall have furnished the Local Authority arising under and by virtue of this Contractor, other than claims, if any, as may be specifically excepted by the Contractor from the operation of the release, provided, each such exception embraces no more than one claim, the basis and scope of which is clearly defined and the amount stated; and provided further, the amounts of such excepted claims are not included in the voucher for payment of said amount due. Upon completion and acceptance of lawns and planting work and the furnishing of a supplemental release relating only to such work, under the same procedure and subject to the same conditions, as are specified in this paragraph for the construction work, final payment exclusive of the retention to assure compliance with the guaranty for such work shall be made to the Contractor."

Upon reading the above paragraph, it is clear that there are clerical errors or omissions for it does not state what the contractor is to furnish the authority. The court inquired about this and was advised that the following words were omitted in the sixth line of the paragraph, "with a release in satisfactory form of all claims against the local Authority."

Upon receipt of this information, the court wrote to all counsel setting forth the above and stating the

court was going to rely upon the authority in Moore v. Moore, 344 Pa. 324 (1942), and supply these words in arriving at its conclusion. Counsel was given ten days to submit authority to the court on the court's proposal. The court received no replies from any counsel.

Where it is apparent that a word has been inadvertently omitted from a written instrument, the clearly indicated missing word may be inserted for the purpose of construing the instrument: Moore v. Moore, 344 Pa. 324 (1924).

"In giving effect to the meaning of a writing particular words are sometimes wholly disregarded or, as here, supplied. 'Such an omission may always be supplied by construction of law, if from the context it appears with certainty what word or words were inadvertently omitted. . . . In supplying omitted words which the context clearly shows must be read in connection with it, to make the instrument the full expression of the manifest intention and understanding of the parties to it, the same is neither altered, varied nor contradicted, but merely put in the shape in which it was intended it should be at the time it was executed': Oleon v. Rosenbloom & Co., 247 Pa. 250, 253, 93 A. 473": Armstrong v. Standard Ice Co., 129 Pa. Superior Ct. 207, 212 (1937).

Here, upon reading the entire paragraph, it is clear that the contractor must furnish the authority a release from claims arising under the contract, making specific exceptions for any claim or claims it wishes to reserve.

In interpreting the final payment clause in this manner, it appears that before the contractor is entitled to final payment, the work must not only be completed but accepted, certified by the architect, approved by defendant Authority and PHA, and the contractor must tender a release.

Pennsylvania Rule of Civil Procedure 1019(c) states:

"(c) In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of such performance or occurrence shall be made specifically and with particularity."

All plaintiff has pleaded is that work was completed.

In Warshaw v. Aramingo Realty Corp., 15 D. & C. 2d 480, 482 (1958), the court stated:

"The second basis for the demurrer is more substantial. The contract requires presentation of a certificate issued by the architect before the contractor is entitled to payment. There is no allegation that such certificates were presented, nor is there a general allegation of performance of conditions precedent. See Pa. R. C. P. 1019(c). Without such an allegation the complaint is insufficient."

## DEMURRER—BELLANTE ET AL., ARCHITECTS

The demurrer of defendants, Bellante, Clauss, Miller & Nolan, raises two issues: 1. As to assumpsit counts— defendant alleges that there was no contract between plaintiff and it, and (2) as to the trespass counts, defendant alleges that plaintiff fails to set forth any facts alleging defendant owes a common-law duty which it breached.

Plaintiff, however, does allege that defendant architects were acting as agent, servant and employe of defendant, housing authority.

"In passing on demurrers to pleadings every material and relevant fact well pleaded and every inference fairly deducible therefrom are to be taken as true": Philadelphia, to use of DePaul & Son v. Magnolia Cemetery Company of Philadelphia, 220 Pa. Superior Ct. 424, 426 (1972).

Allegations of agency and of the agents' authority are allegations of facts and not conclusive of law: Mercy Hospital v. City of Pittsburgh, 15 D. & C. 2d 603 (1957); Lynch v. Wolfinger, 163 Pa. Superior Ct. 405 (1948).

Taking as true the allegations of agency, we must consider whether an agent is liable on principal's contract and whether an agent can be liable to a third party in tort when the alleged wrong is failure to properly perform the duties which arise out of the agency contract.

"As a general rule, the third party has no right to proceed against the agent of a disclosed principal to recover damages sustained by virtue of the principal's breach of contract. In view of the fact that the agent is merely acting in a representative capacity as the alter ego of the principal, all of his acts are deemed to be merely the acts of the principal. Hence, he cannot be deemed to be a party to the contract merely because he represented his principal in its negotiation and execution.": Pennsylvania Summary of Jurisprudence, Agency, §152.

Plaintiff has not plead any facts alleging that defendant architect has expressly assumed any personal liability on the contract of its principal, and since an agent is not normally liable on principal's contract, plaintiff has not plead a cause of action in assumpsit.

We must next consider whether plaintiff has a cause of action in trespass against an agent.

"The general rule now prevailing may be stated to be that an employee who violates a duty which he owes to a third person is answerable to such person for the consequences of his conduct whether it may be described as malfeasance, misfeasance, or nonfeasance. It is equally clear, however, that although a third person may suffer loss or injury as a result of an

employee's failure to perform his duties to his employer, if that breach of duty to the employer is unaccompanied by any act or omission of the employee which breaches a duty owing to the third person, no cause of action accrues in favor of the latter against the employee": 53 Am. Jur. 2d, Master & Servant, §446.

Restatement, Agency supports this view in §352 and §357:

"§352. Agent's Failure to Perform Duties to Principal; in General .

"An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things."

"§357. Conduct Causing Harm to Pecuniary Interests of Third Persons

"An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed."

Pennsylvania courts follow the restatement: Snyder v. The Bell Telephone Co. of Pa., 32 D. & C. 2d 128 (1963).

Plaintiff has not alleged that defendant architects owed it any separate duty, but merely alleges liability for failure to perform duties as agent or employe and economic harm therefrom. Therefore, defendant architect's demurrer is well founded.

In view of our opinion on defendants' demurrers, it is clear that plaintiff has failed to state a cause of action and the complaint is deficient. However, if plaintiff's pleadings may be cured by amendment, a court cannot enter final judgment but must give plaintiff an opportunity to file an amended complaint:

Winters v. Pennsylvania Railroad Co., 304 Pa. 243 (1931); United Mercantile Agencies v. Slotsky, 107 Pa. Superior Ct. 467 (1933). In view of our ruling on the demurrers, we will not consider the motion to strike.

## MOTION FOR MORE SPECIFIC COMPLAINT

Both defendants filed a motion for a more specific complaint, asking, among other things, that plaintiff's claim for damages be more specific.

Plaintiff in counts V and VI allege the following damages, pages 13, 14:

"(a) To incur losses on this Contract, which as of October 31, 1971, amounted to $124,071;

"(b) To lose the profits from this Contract in the sum of $70,099;

"(c) To incur losses on two concurrent contracts in the sum of $53,255, and, further, was deprived of anticipated profits on said contracts in the sum of $74,339;

"(d) To suffer loss of bonding capacity, which deprived Plaintiff of the profits from performing other contracts; and

"(e) To lose his reputation as a sound and reliable contractor, materially affecting its ability to be awarded contracts in the future and thereby damaging plaintiff in the amount of $1,000,000."

"As a general proposition of law, the pleading of damages should be done with as much detail as is possible: 11 P. L. E. Encyc., Damages, §121. General or ordinary damages, which are the usual and ordinary consequences of the wrong done, may be proved without being specially pleaded, or they may be pleaded generally: 11 P. L. E., Damages, §122. This is not to say that general damages will not be required to be pleaded with specificity, inasmuch as the courts of this Commonwealth have consistently held there must be a degree of particularity in the pleading of

damages in order to enable the parties to intelligently prepare for trial: Stoll v. Andreadis, 60 D. & C. 577, 579": Weingrad v. Fisher & Porter Co., 47 D. & C. 2d 244, 246, 247 (1968).

The complaint should, whenever possible, show how the items of damage claimed are ascertained, so that defendant may file a responsive answer: 3 Standard Pa. Pract. Revised, §48.

Defendant is entitled to this information. No facts are alleged to show why the damages for delay in counts V and VI are so much greater than in counts I through IV, and plaintiff does not give defendants any information as to how the amount it claims was ascertained. Defendants have no knowledge from which they could prepare their defense as to plaintiff's claims.

Plaintiff includes in its claim alleged losses on two concurrent contracts, loss of bonding capacity and loss of reputation, which do not normally follow breach of contract.

"Special damages are damages that are not directly related to plaintiff's cause of action. They are not the usual and ordinary consequences of the wrong done, but depend upon special circumstances. It is well established that special damages may not be proved without averring specific facts giving rise thereto": Weingrad, supra, pages 248, 249.

Plaintiff has alleged no facts showing how or why its reputation or bonding capacity were damaged, nor does it make any reference in the complaint to the two concurrent contracts for which it claims losses, or how those losses were sustained.

Further, although not raised by the parties, we question the propriety of seven counts, four in assumpsit and three in trespass, arising out of breach of this contract.

"When a contract is entire, and not severable, only one action can be maintained thereon; a party can have no second action on such a contract, not even on clear proof that no evidence was given as to part of the demand in controversy. In other words, he cannot divide his demand thereon into distinct parts and bring separate actions for each": 3 Standard Pa. Pract., §58.

"It has been held generally that where there is a single consideration, the contract is entire, regardless of the subject matter, and to make a contract severable, there must be an apportionment of the consideration among the items embraced in its subject": Keenan v. Larkin, 194 Pa. Superior Ct. 436, 439-440 (1961).

It appears, therefore, that this contract is entire as it is a construction contract for a single consideration without apportionment. Therefore, plaintiff has only one cause of action in assumpsit for breach of contract, not three against architect and four against the housing authority.

Pennsylvania Rule of Civil Procedure 1020(d)(1) does recognize that a transaction or series ·of transactions may give rise to causes of action in both assumpsit and trespass, and permits alternative pleading, so plaintiff is not required to elect between assumpsit and trespass.

However, it seems clear that plaintiff should have pleaded only one count each in assumpsit and trespass as to each defendant.

Accordingly, we enter the following

## ORDER

Now, June 12, 1974, at 2:05 p. m., it is ordered and decreed as follows:

1. The preliminary objections to counts I, II, III, IV, V, VI and VII, demurrers, of defendant, Housing

Authority of the City of Hazleton, are sustained, unless plaintiff files an amended complaint responsive to the law set forth in this opinion within 30 days.

2. The preliminary objections to counts I, II, III, IV, V and VI, demurrers, of defendant, Bellante, Clauss, Miller & Nolan, are sustained, unless plaintiff files an amended complaint responsive to the law set forth in this opinion within 30 days.

3. The preliminary objections for a more specific complaint of both defendants is granted, and plaintiff is directed to file an amended complaint relative to damages as set forth in this opinion, but this paragraph is subject to the additional provisions of paragraphs 1. and 2. of this order.