Ladner et al. *v.* Siegel et al.

Argued October 1, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Saul, Ewing, Remick & Saul* and *Brown & Williams,* for defendants, appellants and appellees.

*Grover C. Ladner,* for plaintiffs, appellants and appellees.

OPINION BY MR. JUSTICE SADLER, November 26, 1928:

The plaintiffs are owners of certain residences in the City of Philadelphia, erected on land purchased from Siegel, one of the defendants, subject to certain building restrictions. The latter determined, in 1927, to construct apartment houses in seven units on an adjoining block owned by him, surrounding three sides thereof, with stores on the other, fronting Pine Street. On this thoroughfare it was also proposed to provide an entrance to a large garage within the enclosure, to be used by the tenants of the buildings surrounding it, as well as others desiring to make use of the same facilities. Averring the locality to be residential in character, and that the garage suggested was intended to be used generally by any auto owner desiring service, an injunction was asked to restrain the construction. It was further alleged that the conduct of such a business would be offensive, constituting a private nuisance, and also result in the violation of certain building restrictions by which the land was bound, as agreed to by the defendant, grantor, when he sold the lots on adjoining property to the complainants. The court below passed on the first question raised, holding that there could be no

operation of a public garage in the clearly established residential community, and its decree was affirmed by this court: Ladner v. Siegel, 293 Pa. 306. Whether the actual carrying on of the business for the use of the tenants of proposed apartments only would be so offensive as to justify restraint (George v. Goodovich, 288 Pa. 48; Mitchell v. Guaranty Corp., 283 Pa. 361) was not determined, as the prayer of the bill was to prevent the opening of a "public garage." Nor was it deemed necessary in the former proceeding to decide whether the building restrictions found in plaintiff's deeds could be enforced as against the land retained by the grantor. This latter question has, in an opinion filed this day, on appeal to '264 January Term, 1928, been decided adversely to the complainant: Ladner v. Siegel, 294 Pa. 360.

In the former proceeding the defendants insisted that the building, as constructed and proposed to be used, could be adapted to the handling of large numbers of automobiles without invasion of any rights of adjoining landowners, particularly since the cars would be cared for largely in underground storage rooms, and the view of the garage itself would be cut off by the new buildings which would entirely surround and conceal it. At that time the court was asked for permission to make temporary use of the structure, which had been built, notwithstanding the equity proceeding, under the control of a master to be appointed, so that it could be determined whether its actual operation would be objectionable, and constitute a nuisance in fact. This proposed experimental test was properly refused, and a final order thereupon made prohibiting the public garage.

After the affirmance of the order made, a petition was presented to the court asking for a declaratory judgment fixing the rights of the defendants in the conduct of the garage, in case it was carried on in such a way as not to constitute a private nuisance. The court was asked to say that it was permissible to operate it in con-

nection with one unit of the proposed apartment house, of sufficient size to accommodate 100 families, to be constructed on the southeast corner of 47th and Pine Streets, and also for the tenants of the Garden Court Apartments, located on the opposite side of the street, owned by a corporation of which the defendant was the holder of the entire capital stock. The unit about to be put up, or so-called annex, would not enclose the automobile storage house complained of, but abut on the east side thereof. A judgment was entered permitting the use of the garage by individual tenants, provided buildings were built on the three sides surrounding it, as defendant had set forth was the purpose in the first proceeding, but denying the right to use the garage by the occupants of the proposed single unit or to rent space therein for those residing in the building on the opposite side of 47th Street. In answer to a third query the court held the garage would not be considered a "public" one, so long as its use was limited to the lessees of the apartment house surrounding it and constituting part of the same operation, provided the garge was so conducted as not to create a private nuisance. Both parties were dissatisfied, and have appealed, the plaintiffs to No. 321, January Term, 1928, and the defendants to No. 297 and 319 of the same term, the second of the two last mentioned writs having been sued out because of an amendment to the first declaratory judgment entered. The three appeals, raising the same questions, may be considered together, for the controlling question presented by the record, as we view it, is this: Do the circumstances here disclosed give any jurisdiction to the court below to enter a declaratory judgment?

The proceeding is based on the Act of June 18, 1923, P. L. 840, which provides that courts of record, "within their respective jurisdictions, shall have power to declare rights, status and other legal relations" between parties, where there is a real matter in controversy. Its main purpose is to provide a convenient method of

determining the disputed interests of parties under "deeds, wills, written contracts or other writings constituting a contract," and the act has, to this time, been applied in this State only to cases of the kind mentioned: Kariher's Petition (No. 1), 284 Pa. 455; Garvin & Co. v. Lancaster Co., 290 Pa. 448; Sloan v. Longcope, 288 Pa. 196; Devlin's Est., 284 Pa. 11; Girard Trust Co. v. Motor Co., 291 Pa. 507; Brown's Est., 289 Pa. 101. It is provided, however, by section 5 of the statute under consideration that the enumeration of the specific cases referred to will not restrain action "where a judgment or decree will terminate the controversy or remove an uncertainty." This legislation was declared constitutional in Kariher's Petition (No. 1), supra. In the careful discussion by the chief justice, it was then said that, to be applicable, a real controversy must exist, and moot questions will not be considered, and mere advisory opinions are not contemplated. "Moreover, in a declaratory judgment proceeding the court will not decide future rights in anticipation of an event which may not happen, but, just as in the ordinary executory action, it will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision,......and even then such rights will not be determined unless all parties concerned in their adjudication are present and ready to proceed with the case so that the judgment rendered will make the issues involved res judicata in the full sense of that term" (p. 472).

There is no power granted by this act to give advisory opinions in moot cases (35 C. J. 1100), or to determine matters not essential to the decision of the actual controversy before the court, though such questions may in the future require adjudication (Brown's Est., supra), or pass upon contingent or uncertain situations (Tanner v. Boynton Lumber Co. (N. J.), 129 Atl. 617; In re Gooding's Will, 208 N. Y. Supp. 793), nor will the court prejudge a case which possibly may arise, nor act unless

all interested appear as parties, since the decree is a final adjudication: Kariher's Petition (No. 1), supra; Girard Trust Co. v. Motor Co., supra; Sloan v. Longcope, supra. Ordinarily, it will not act where there is a dispute as to facts, or such controversy may arise (Dreiser v. John Lane Co., 171 N. Y. Supp. 605; Note, 12 A. L. R. 71), nor if another legal remedy is equally available: Leafgreen v. La Bar, 293 Pa. 263; Dempsey's Est., supra; List's Est., 283 Pa. 255; McCalmont v. McCalmont, 93 Pa. Superior Ct. 203. In the present case, the question of whether the use of the garage as now contemplated would constitute an offensive business in the neighborhood, and a private nuisance, affecting not only complainants, but others residing near by, could not be determined until its actual operation at some future date.

The case is somewhat similar to Faber v. Gosworth Urban Dist. Council (1903), 88 L. T., N. S. 549, 67 J. F. 197, 19 Times L. R. 435, 1 L. G. R. 579, where it appeared that the plaintiff had formed a plan for the erection of a large number of buildings which he desired to connect with the defendants' sewer; the defendants denied his right to connect with their sewer, but at the same time asserted that they had no intention of interfering with any of his legal rights. Under these circumstances it was held that the plaintiff was not entitled to a declaratory judgment as to his right to make a sewer connection; the decision was placed on the grounds that he had not as yet taken any steps for the construction of the buildings necessitating the use of the sewer, and, since the scheme was extensive, and, if carried out, a considerable volume of sewage would be sent down into the sewer, there was no showing as to what the effect would be.

The declaratory judgment is not a proceeding intended to impose equitable terms on disputing parties (Chapman v. Michaelson (1909), 1 Ch. (Eng.) 238), but is to determine fixed legal rights: Miller v. Miller,

149 Tenn. 463, 261 S. W. 965. Here, we find a final decree, enjoining the operation of a public garage on the block in question, affirmed on appeal. The petition is not to modify the decree, but to have the court declare the manner in which the business shall be conducted, and whether the new structure can be used for tenants of a single building to be erected on the same lot, and also by lessees of another apartment on an adjoining square, separated by a public highway, assuming a question of fact that the operation shall be so conducted as not to be offensive, and constitute a private nuisance, a matter which can be determined only at some subsequent time. If such a proceeding was to be countenanced, then approval would be given to applications in any like equity case to have a determination as to whether the court's order should be held ineffective, under stated facts depending on contingent and future events, with resulting confusion, and the decree would lack the finality which is contemplated in law. If petitioners believe the operation intended to be unobjectionable under the order made, they may proceed at their own risk. Until this is done, the court is in no position to determine the exact facts involved, and whether defendants have violated the injunction issued against the maintenance of a "public garage," or whether in fact a "private nuisance" has been created, a question not discussed in the original proceeding. The order, if made, would be res judicata of matters not previously considered and passed on by the court. The Act of 1923 was not designed to secure interpretation of judicial decrees already entered.

"Construction of a decree cannot be given until the question comes regularly before the court in proceedings requiring construction and application to acts alleged to have been done or omitted under it": 21 C. J. 689. What was said in Eureka Fire Hose Co. v. Eureka Rubber Mfg. Co., 72 N. J. E. 555, 65 Atl. 870, where the court had enjoined the use of the name "Eureka" in the

title of a corporation, manufacturing a competitive article, "or otherwise," and the court was asked to modify the order so as to permit the use of the word as to articles noncompetitive, may be repeated here: "On the appeal the decree was affirmed, for the reasons given by the court below, and these reasons must now be treated as the opinion of the appellate court, on all points necessarily involved in the decision and decree. The present application to modify the injunction and decree is thus substantially an application to this court for a rehearing of the cause on this point, after affirmance on appeal......Nor can the cause now be reheard in this court, for the purpose of altering or modifying this part of the decree or the injunction based on it, in order to remedy a supposed grievance or inconvenience consequent on the decree. Defendant also asks on this application a construction of the decree and injunction, on the point whether its proposed use of the word "Eureka" will be a violation of the injunction, but the court has no authority to affect in advance the rights of the parties under the terms of the decree, by a construction of the decree. Such construction cannot be given until the question comes regularly before it in proceedings requiring its construction, and application to acts alleged to be done or omitted under it."

The Declaratory Judgment Act of 1923 was not intended to be used to modify or elucidate judicial decrees, as here proposed, and the proceeding now complained of should not have been entertained. It is unnecessary to express an opinion as to the merits of the controversies attempted to be raised in the manner adopted.

The judgment entered is reversed, and it is directed that the petition for a declaratory judgment be dismissed at the cost of petitioners.