## Rebmann's Estate

*Leonard F. Markel, Jr.,* and *G. Ruhland Rebmann, Jr.,* of *Edmonds, Obermayer & Rebmann,* for petitioner.

*Richard W. Thorington,* guardian ad litem, for respondents.

VAN DUSEN, P. J., March 3, 1939.—The will contains a power to retain investments of the testator, but not to make nonlegal investments.

The testamentary trustees filed an interim account, which was audited, and a surcharge was imposed which was paid, but the securities remained in the trust. One of the two trustees retired, and two substituted trustees were appointed. The three trustees now find themselves in possession of these securities; also of certain stocks which were taken by the prior trustees in exchange for stocks owned by testator; and also of certain investments which were legal when they were made but are so no longer, some by reason of changes in the law, and others by reason of changes in the facts. These items were all "awarded" to the new trustees upon the adjudication of the account of the former trustees.

Now the trustees are in doubt as to their duty toward these securities. If they have no duty to sell them as promptly as reasonably can be done, they think that all of them should be retained for the present. If they have

such a duty, they think that some can be sold now without sacrificing intrinsic values, and that better prices can be obtained for others if they are kept. They therefore apply to this court for authority and direction to retain or sell these items under the provisions of section 49 (e) 2 of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by the Act of May 28, 1937, P. L. 1037, 20 PS §866, which reads as follows:

"Where stocks, bonds, or other securities have been distributed in kind, as above provided, to any fiduciary, if such fiduciary be doubtful as to the propriety of retaining or making sale of such securities, he may apply to the orphans' court having jurisdiction of his accounts, by petition, for authority and direction to retain or sell the same; whereupon, after due notice to all parties interested, the said court shall make such order in the premises as to it may appear proper."

The prayer of the petition is for a citation directed to the adult parties in interest to show cause why a decree should not be entered which is given in full. The adult respondents have filed no answers. A guardian ad litem for minors and trustee ad litem for unascertained interests has been appointed, and he contests the statement of the duty of the trustees which is set forth in the proposed decree.

The first paragraph of this decree declares that the securities in question have been received by the trustees pursuant to "decree of court" within the meaning of section 41 (a) 19 (c) of the Fiduciaries Act, as amended by the Act of May 28, 1937, P. L. 1037, 20 PS §801. However, the petition is professedly presented under section 49 (e) 2, as amended in 1937. That section applies to securities which have been "distributed in kind" under the terms of section 49 (e) 1; and the argument assumes that the latter section is in pari materia with section 41 (a) 19 (c), that is to say, that securities distributed under "decree of court" within section 41 (a) 19 (c) are securities which may have been "distributed in kind" under

section 49(e)1, and that therefore the duty and procedure of section 49(e)2 (quoted above) is applicable to securities of either or both descriptions.

The second paragraph of the proposed decree declares that it is not the duty of the trustee to dispose of the investments as promptly as reasonably can be done, but merely to exercise the care and prudence which would be required if they were legal investments. That which makes the doubt as to this paragraph—even if the securities are within the descriptions already quoted—is the amendment of 1937 to section 49(e)2. Prior thereto this section of the Fiduciaries Act read as follows:

"Where stocks, bonds, or other securities have been distributed in kind, as above provided, [Section 49(e)1] to any fiduciary, *it shall be the duty of such fiduciary to use reasonable diligence in converting such securities as shall not be investments now or hereafter authorized by law;* and, if such fiduciary be doubtful as to the propriety of making sale of such securities, he may apply to the orphans' court".

The words in italics were stricken out by the Act of 1937, and the words "retaining or" were inserted before the words "making sale." The result is supposed to be that securities received under "decree of court" or "distributed in kind" have the status of legal investments.

These proposed declarations the guardian and trustee ad litem contests. An interesting and important question is presented, which we commend to the attention of the profession. Unfortunately we are not able to give a judicial answer to it in this proceeding.

Section 49(e)2 was not intended to authorize general directions, but specific directions. To come within it, petitioners should deal with each security separately, and should explain the considerations pro and con which make sale or retention desirable. Whether such a proceeding can be entertained can only be determined when it comes before us. In its present form the petition clearly seeks an advisory opinion; and it may be that a proceeding actually falling within section 49(e)2 would still be ad-

visory—particularly if it sought a general negative decree for retention of a security.

Petitioners make no claim and seek no relief against anyone. Nobody with any interest of his own resists them. There is no controversy except the artificial controversy created by the appointment of a guardian and trustee ad litem. (We do not mean to impugn the good faith of the guardian, who has ably and zealously presented his views.) The trustees have doubts as to the law on a question of considerable difficulty, and they come to the court for a commentary on and exposition of the law which will guide them, and which will be binding on the parties. Such an advisory opinion is not within the judicial power. See the cases cited below which deal with the Declaratory Judgments Act. Mr. Justice Mitchell explained the reason why advisory opinions should not be given in a classic passage in Tyson's Estate, 191 Pa. 218, 224:

"It is quite true that the courts of Pennsylvania have no jurisdiction to declare the construction of a will and rights under it by way of advice in limine, and without adverse litigants actually before them. It is not desirable that they should have. Notwithstanding some convenience, as remarked by Sharswood, J., in Willard's Appeal, 65 Pa. 265, such practice would be contrary to the whole fundamental theory of our law under which courts do not advise but decide, and for decision there must be an actual contest. No man and no court can foresee the state of facts that may occur in the future, and ex facto oritur jus. In no class of cases is this truer than in those arising under wills. It is the unexpected, the condition of facts unforeseen, and therefore unprovided for, that gives rise to most of such litigation. And no judge can have failed to observe, not only in will cases, but in all others, how the knowledge and self-interest of parties actually contending for success conduces to precision and accuracy in the judicial result. Hence the very noticeable fact that with all the disadvantages of inexperience, want of learning, etc.,

on the part of counsel that sometimes embarrass a case, it is only in the rarest of instances that the true ground of determination fails to be developed in the argument. Nothing sharpens the wits for the presentation of every possible view like the interest of opposing parties dealing with known facts in a genuine contest for victory. It is that which gives the superior value to the decision of a court of even moderate ability, over the ex parte opinions of the most learned and experienced counsel."

The relief here sought cannot be given under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840. That act is carefully drawn to exclude advisory opinions: Kariher's Petition (No. 1), 284 Pa. 455; Ladner et al. v. Siegel et al., 294 Pa. 368; Reese et al. v. Adamson et al., 297 Pa. 13; and Sterrett's Estate, 300 Pa. 116 (in which the court said that the record "shows no controversy whatever, only a desire by the petitioner to be instructed on the law, and this state of affairs does not permit of a declaratory judgment") : Cryan's Estate, 301 Pa. 386, and the very recent case of Carwithen's Estate, 327 Pa. 490. By section 6 of the Uniform Declaratory Judgment Act relief may only be granted when the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. The purposes of such a proceeding is to "obtain a declaration of rights, status or other legal relations." It may be usefully employed when the question to be decided can be simply stated, as for example whether A or B or class A or class B are the persons entitled in remainder to a trust fund. But see Straus' Estate, 307 Pa. 454. But when the declaration sought involves a number of future facts which may or may not exist, and especially when it involves not right and title but conduct (as here, the future conduct of trustees) it is dangerous to attempt to define the duty in general terms. The facts as eventually ascertained may not fit the advice; and in addition to the ordinary

uncertainties of the law there is added the uncertainty which is very likely to arise from the language of the decree. Words are imperfect at the best, and though the greatest care is taken, ambiguous language may be used, or in the light of the facts as they are eventually established, words may turn out to be uncertain in their meaning or to have an apparent meaning different from that which was intended. In Ladner v. Siegel, supra, the court suggested that the request for a declaratory judgment was really a request for the interpretation of a decree theretofore entered in an injunction proceeding.

The following passages from Borchard on Declaratory Judgments, page 31, are also illuminating:

"Actions or opinions are denominated 'advisory,' when there is an insufficient interest in the plaintiff or defendant to justify judicial determination, where the judgment sought would not constitute specific relief to a litigant or affect legal relations or where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive"; and again at page 56:

"Among other reasons for confusing the declaratory judgment with the advisory opinion is the supposed analogy occasionally adduced of a trustee or receiver or person acting in a fiduciary capacity petitioning the court for instructions or directions as to his powers. While this is an exceptional instance in which judicial power is sometimes—though by no means often or usually—solicited and exercised *ex parte* without a controversy and for guidance and advice only, it is unfortunate to suggest the practice as an analogy for a declaratory action, which presupposes an opponent whose interests are distinctly adverse and whose legal relations to the plaintiff will be definitely affected by the judgment pronounced."

Though this reason for refusing to entertain the petition has not been urged by the respondent who appeared, we are bound to notice it of our own motion. The petition is dismissed for lack of jurisdiction.