Dravo Estate.

Argued July 6, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Wm. F. Knox,* with him *Moorhead & Knox,* for appellants.

*William J. Lappe,* with him *Herbert R. Hahn,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, September 27, 1948:

The case originated in a petition for a declaratory judgment construing the Will of Francis R. Dravo, Deceased. The petition was presented to the Orphans' Court of Allegheny County by J. S. Miller and eight other remaindermen beneficiaries under paragraph Fifth (d) of the Will of Francis R. Dravo, deceased, late of Edgeworth, Allegheny County, Pennsylvania, who died on February 26, 1934. Francis R. Dravo executed his will on February 20, 1933, which was duly probated. The decedent gave the residue of his estate to his wife, his brother, and the Fidelity Trust Company, in trust, to pay the net income of the trust estate to his wife, Fanny Martin Dravo and, upon her death, he directed that the trust estate should be divided by the Trustees into three equal parts, designated as Parts "A", "B", and "C", and he directed that the net income from Part "C" should be paid to Ralph M. Dravo, brother of the testator, and to Jane M. Dravo, the latter's wife, or either of them, for life, and, at the death of the survivor, to certain named employes of Dravo Corporation in certain proportions, with certain provisions for forfeiture, hereinafter stated.

Ralph M. Dravo died on November 11, 1934, and his widow is still living. The testator's widow is also still living, and she, with the Fidelity Trust Company, are the present Trustees for the trust in respect to the residuary estate of the decedent, created in paragraph Fifth of his will. The present market value of the property held by the Trustees in trust is about $875,000. The portion of the will of the decedent in respect to which petitioners are seeking a declaratory judgment in this proceeding is found in paragraph Fifth (d) under the heading Part "C", and reads as follows: "The net income from Part 'C' shall be paid in quarter annual installments or other convenient payments to Ralph M. Dravo and Jane Dravo, his wife, or either of them during their lives, and at the death of the survivor of them and of Fanny Martin Dravo, I direct my Trustees to divide the said Part 'C' among the following persons in the following proportions, provided they are in the employment of The Dravo Corporation, or any of its subsidiary companies at the time of the death of the survivor of Ralph M. Dravo and Jane Dravo, his wife, and Fanny Martin Dravo, and provided further that if any of them shall have died in the service of the aforementioned companies then in such event, his or their share shall be paid to his or their heirs:

| J. S. Miller | 17% | C. B. Jansen | 7% |
| V. B. Edwards | 15% | A. Davia | 5% |
| J. D. Berg | 12% | L. A. Mertz | 5% |
| A. W. Dann | 10% | C. A. Hill | 5% |
| J. W. Connell | 10% | E. T. Gott | 6% |
| Wm. H. Fowler | 8% | | |

"In the event of the termination of service with any of the aforementioned companies of any of the aforesaid persons, by reason of resignation or discharge, or any other cause, excepting death, or by reason of physical or mental disability, then the proportion of such person or persons shall revert to the whole of Part 'C', and the remaining parts shall be increased pro rata."

The petitioners are all of the employe beneficiaries named in the above quoted excerpt of said will except J. W. Connell, who died on October 15, 1936, and V. B. Edwards, who died on May 8, 1946, both being in the employ of Dravo Corporation at the time of their death. All of the petitioners are now in the employ of that corporation. All of the petitioners have been in such employment from various dates between May 15, 1898, inclusive, and October 6, 1929, inclusive.

The petition sets forth that the Board of Directors of Dravo Corporation, which has a total membership of fifteen persons, proposes to adopt a compulsory retirement plan, whereby officers and managers elected or appointed by the Board of Directors, upon attaining the age of sixty-five years, may be retired and, upon attaining the age of seventy years, shall be retired from employment by the Dravo Corporation. A copy of the resolution for the establishment of that plan, proposed to be adopted by said Board of Directors, is attached to the petition. All of the petitioners will be subject to the provisions of that plan if it is adopted, except A. Davia. The petition further sets forth the following: "Your petitioners are of the opinion that if the retirement plan is adopted and any of them are retired thereunder and his or their employment with Dravo Corporation is terminated thereby, his or their proportionate interests of Part 'C' of the estate of Francis R. Dravo, deceased, will not be forfeited, being of the opinion that (1) a termination of employment by reason of physical or mental disability prevents forfeiture; and (2) a termination of employment under a compulsory retirement plan is within the meaning and scope of the physical or mental disability clause."

Paragraph 10 of the petition reads as follows: "Your petitioners believe that the phrase 'or by reason of mental or physical disability' should be linked with the immediately preceding words 'excepting death', it being

the intention of the testator that both death and physical or mental disability should prevent forfeiture. Your petitioners further believe that, if the testator had intended that death should be the only happening upon which termination of employment would not effect a forfeiture, the insertion of the clause 'or by reason of physical or mental disability' would be superfluous, since the words 'or any other cause' in the preceding line would include termination of service on account of physical or mental disability."

Paragraph 11 of the petition reads as follows: "Your petitioners further believe that the general impairment of mental and physical powers incident to age recognized by the retirement plan as stated in the resolution, Exhibit No. 2, would constitute a termination of employment by reason of mental or physical disability within the meaning of the will."

Petitioners then say they "are informed and believe, and therefore aver, that the Board of Directors of Dravo Corporation will not adopt the retirement plan aforesaid if such action is opposed by your petitioners."

The court was then asked to declare that termination of employment because of an actual mental or physical disability or by virtue of retirement under the compulsory retirement plan, will not effect a forfeiture of interests of the petitioners under the Will of Francis R. Dravo, deceased, pursuant to the authority conferred upon the court by section 2 of the Act of 1923, P. L. 840, as amended.

The court below considering this a proper case for declaratory judgment declared in an opinion by President Judge TRIMBLE, concurred in by Judge BOYLE, that: "The meaning of this will, as above quoted, must not be twisted and strained to include an evasion which was not in the testator's mind. Nothing but death, and possibly physical or mental disability, could terminate the services and preserve the legacy. How can we safely

say that retirement at 65 or 70 years of age to be brought about by resolutions of the corporate managers, long after the testator's death, is not an evasion of the testamentary direction? Evidently the testator intended that life service, unless actually physically or mentally disqualified, was to be the inducement to obtain the legacies for the beneficiaries or their heirs. It is a quite unreasonable interpretation that demands the arbitrary addition of the words 'or termination of services by retirement' after the phrase 'excepting death', so as to bring about a condition contrary to the expressed intention of the testator. If the testator had said 'or any other cause, excepting death *or retirement'*, then we would know that the testator had in mind the possibility of retirement by his faithful servants, but he did not so state it and we cannot add anything to his will."

The petitioners are asking the court to render an opinion as to the petitioners' rights under certain clauses of a decedent's will in the event (1) that a certain proposed compulsory retirement plan is adopted by the Board of Directors of the Dravo Corporation and (2) that the petitioners or any of them are retired, pursuant to the provisions of that plan, from their employment with the Dravo Corporation. In other words, though the plan is not yet adopted and therefore has no legal existence and though the petitioners have not retired from their employment with the Dravo Corporation, we are asked to declare judicially what petitioners' rights will be *in the contingency* that the "proposed plan" *is* adopted and they are retired under it. Such an opinion would be one merely on a hypothetical state of facts and under the Uniform Declaratory Judgments Act judicial opinions are not to be rendered upon mere hypotheses.

This Court held in *Kariher's Petition (1)*, 284 Pa. 455, 472, 131 A. 265, that it "will not decide future rights in anticipation of an event which may not happen." We

further said in our opinion in that case, "that jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, or the ripening seeds of one, exists between parties, all of whom are sui juris and before the court, and that the declaration sought will be a practical help in ending the controversy". Citing many cases from other jurisdictions.

The Uniform Declaratory Judgments Act has been adopted by at least twenty-five States. The leading cases in other jurisdictions show judicial refusal to enter declaratory judgments on records such as the one now before us. For example, the Supreme Court of Idaho said that the Act can be invoked only when the question "involves actual and existing facts": *State ex rel. Miller v. State Board of Education* (1935), 56 Idaho 210, 52 P. (2d) 141. The Supreme Court of Colorado said: "This act was not intended to repeal the statute prohibiting judges from giving legal advice, nor to impose the duties of the profession upon the courts, . . . nor to settle mere academical questions": *Gabriel v. Board of Regents* (1928), 83 Colo. 582, 267 Pac. 407.

The Supreme Court of North Dakota said: "No action or proceeding lies under the Declaratory Judgments Act to obtain a decision which is merely advisory, or which merely determines abstract questions": *Langer v. State,* 1939, 69 N. D. 129, 284 N. W. 238. The New Jersey Court of Chancery aptly said in *Tanner v. Boynton Lumber Co.* 129 A. 617, 618: "To entitle complainants to have this court consider the situation set out in their bill and to render a declaratory judgment thereon, it should appear from the facts alleged that they have present rights against the persons whom they make parties to the proceedings, with respect to which they may be entitled to some relief."

The Supreme Court of the United States in *Aetna Life Insurance Co. v. Haworth,* 300 U. S. 227, 240, in defining the word "controversy" in the Federal Declara-

tory Judgment Act said, speaking through Mr. Chief Justice HUGHES: "A 'controversy' in this sense must be one that is appropriate for judicial determination. Osborn v. United States Bank, 9 Wheat. 738, 819. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. United States v. Alaska S. S. Co., 253 U. S. 113, 116. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. South Spring Gold Co. v. Amador Gold Co., 145 U. S. 300, 301; Fairchild v. Hughes, 258 U. S. 126, 129; Massachusetts v. Mellon, 262 U. S. 447, 487, 488. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" (citing numerous cases).

In *Allison v. Sharp*, 209 N. C. 477, 184 S. E. 27, the Supreme Court of North Carolina said: action is not maintainable under Uniform Declaratory Judgment Act for determination of theoretical problem or moot questions. In *Malick's Petition*, 133 Pa. Superior Ct. 53, 59, 60, the Superior Court of Pennsylvania refused to enter a declaratory judgment, saying in the opinion of Judge CUNNINGHAM: "What the intervenor really sought, . . . was, in effect a declaratory judgment or adjudication of her possible rights in the future. . . ."

In *Straus' Estate*, 307 Pa. 454, 457, 458, 161 A. 547, this Court affirmed the refusal of the court below to render a declaratory judgment. This affirmation was on the opinion of Judge GEST of the Orphans' Court of Philadelphia, in which he said, inter alia: "The Declaratory Judgments Act can only be invoked where a real controversy exists: Lyman v. Lyman, 293 Pa. 490; Sterrett's Est. 300 Pa. 116, and Cryan's Est., 301 Pa. 386, and the court will not decide future rights in antici-

pation of the event at which such future rights call for decision: Ladner v. Siegel, 294 Pa. 368. . . . Doubtless it would be more convenient for the executors to have us construe the will in advance, but this is by no means an adequate reason."

The declaratory judgment is vacated. Petition is dismissed. Petitioners will pay the costs.