## Lifter Estate

Before Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Sigmund H. Steinberg, Stephen J. Korn* and *Walter B. Gibbons,* for preliminary objections.

*Israel Packel,* contra.

BOLGER, J., November 14, 1952.—The Federation of Jewish Charities petitions the court for declaratory judgment under the Act of June 18, 1923, P. L. 840, as amended, for an interpretation of the will of Morris Lifter, deceased, who died August 16, 1948, under which petitioner has a remainder interest, subject to conditions, with gifts over in default thereof. The substitutionary beneficiaries are respondents and in-

clude a guardian ad litem for all minor beneficiaries and a trustee ad litem for possible unascertained interests. Preliminary objections have been filed under section 4 of the Declaratory Judgments Act of 1923 on behalf of the substitutionary beneficiaries, attacking the jurisdiction of the court, while the guardian and trustee ad litem has filed an answer wherein the legal conclusions of the petition are denied and the jurisdiction of the court questioned. The executors' account was audited by this court and the balance awarded to the trustees for the benefit of testator's widow for life. The schedule of distribution was approved October 27, 1949. The fund approximates $600,000 and the widow is still alive.

The provision of the will in question is paragraph eighth (r) :

"All the rest, residue and remainder . . . shall be paid over to the Federation of Jewish Charities of Philadelphia for the purpose of erecting, and provided they shall erect, (beginning such erection within a period of not more than five years from the date of my death) a building for such humanitarian purpose or purposes as in the judgment of said Federation is most urgently needed at the time of such distribution, such building to be known as Morris and Effie B. Lifter Building."

In three other provisions of the will the critical time is testator's death, while in four others it is the death of the life tenant, testator's widow.

The federation, petitioner, seeks to have the court determine now whether the five-year limitation for beginning the erection of the building should date from testator's death or from the widow-life tenant's death. It avers its intention to accept the gift and in either event to start erection within whatever five-year period the court decides. If such five-year period dates from

the death of testator, erection must start before August 16, 1953.

The reasons in support of the preliminary objections are that no controversy exists, no imminent or inevitable litigation is threatened and, therefore, any judgment or decree would be merely advisory; that the interpretation of the will must await the life tenant's death when the statutory remedy of accounting will be available, and that there are possible unascertained interests existing.

Normally, we are reluctant to dispose of litigation upon preliminary objections believing that there should be opportunity to present the complete factual situation: Gallagher v. Merry, 366 Pa. 258. However, this reluctance is based upon the possibility of averments of fact being denied by an answer. This is not true of the instant issue which involves only the question of jurisdiction.

This court having had only the slightest contact with this procedure, we find it of profound interest to review the pertinent legislation and the authorities construing it. Our uniform practice is to defer consideration of petitions involving questions of constructions of wills or of deeds, most of which recently have involved termination of trust applications until the audit of an account.

The first Declaratory Judgments Act in Pennsylvania was that of June 18, 1923, P. L. 840. This was amended on April 25, 1935, P. L. 72, sec. 1. This latter act was in turn amended on May 26, 1943, P. L. 645, sec. 1, 12 PS §836. The latter act provides that:

"Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case

the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed. . . ."

In the leading decisions of our appellate courts construing the Declaratory Judgments Act, reference is frequently made to the comprehensive work by Edwin Borchard, codraftsman of the Uniform Act, the Federal Act and States' acts, "Declaratory Judgments", and to his frequent articles in law reviews, including 92 University of Pennsylvania Law Review, p. 50. In this latter article, Professor Borchard points out that the proceeding may be instituted in three types of cases: (1) Where another action could also have been brought, the action for a declaration being an alternative remedy; (2) involving the construction of written instruments, before or after breach, and (3) actions initiated by a challenger or a person in jeopardy, where another action would not have been possible.

A complete comprehension of judicial interpretation of the legislative intent of this practice in Pennsylvania can be obtained by a thorough reading of Kariher's Petition (No. 1), 284 Pa. 455, wherein Chief Justice Moschzisker, in passing upon the constitutionality of the Declaratory Judgments Act of 1923, goes into the nature, history and widespread adoption of this proceeding here and elsewhere. In Pennsylvania, prior to the passage of the act, we had many procedures which were akin to those provided in the act, such as cases stated and feigned issues wherein, as in the case of

declaratory judgments, no executive process follows. He also discusses the distinctions between advisory and moot cases and those involving real disputes over real facts. The basis of the jurisdiction is not that actual wrong be done such as would give rise to an action for damages or that any wrong be immediately threatened such as would be proper basis for an injunction—a present cause of action is not essential. Due process is afforded because the proceeding seeks adjudication of the same nature as is present in other cases, and that we must look to matters of substance and not of form in determining jurisdiction. In the exercise of the discretion which the act vests in the courts as to taking or refusing jurisdiction, the court will not decide future rights in anticipation of an event which may not happen unless special circumstances appear which warrant an immediate decision.

Professor Borchard in 92 University of Pennsylvania Law Review (p. 50) states that an excellent beginning was made in Pennsylvania in Kariher's Petition, supra, but that after a few years in many cases, mainly those involving wills and probate jurisdiction, it was held that the declaratory action could be employed only when no ordinary form of action was available, because the main purpose of the declaratory procedure, it was said, was to insure a speedy determination of issues "which would otherwise be delayed to the possible injury of those interested if they were compelled to await the ordinary course of judicial proceedings." The Act of 1935 was an attempt to delimit this interpretation; however, an addendum was added to this act which rendered it somewhat ambiguous. This ambiguity was cured in the existing Act of 1943, and we find since then much broader application of the remedy.

In Kraft Trust, 77 D. & C. 308, 311, reference is made to the language of Braham, P. J., in an opinion

approved by the Supreme Court in New Castle School District v. Travers et al., 353 Pa. 261, 264:

"To the litigants, procedural questions mean nothing; they want the dispute decided. Thus the legislature has merely directed the Courts to do what we should have known enough to do without the direction, —take the cause of the parties who are all before the Court with the controlling question of law which is apt and ripe for decision and decide the question. . . . In the Act of 1935 the people are speaking to a branch of the government which they believe to be lagging behind in the progress of government. They may be telling us to forget some of our technical learning; they are certainly telling us to get on with our business of deciding the peoples' questions for them."

This court, which has had a minimum of declaratory judgment proceedings, has no intention of setting up technical learning as a barrier to prompt disposal of the people's business.

The severability of the three basic conditions of jurisdiction: The existence of a controversy, the presence of antagonistic claims which indicate imminent and inevitable litigation and the assertion by parties of concrete relation, status, right, etc., was decided in Melnick v. Melnick et al., 147 Pa. Superior Ct. 564. However, the presence of any one or more of these three conditions must be supplemented by the court being satisfied that the proceeding will decide the controversy and that there exists no other special statutory form of remedy for the specific type of case involved.

In approaching this problem, we are aware that our jurisdiction is derived only from statutory law: Hunter's Orphans' Court Commonplace Book, vol. II, p. 946, par. 1(a). However, section 2 of the Declaratory Judgments Act of 1923, supra, provides:

"Any person interested under a . . . will . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder."

Furthermore, both the amendatory Acts of 1935 and 1943, supra, confer jurisdiction ". . . in all civil cases. . . .". It is also quite clear that in fields of law which are strictly statutory and which contain adequate remedies, such as workmen's compensation, courts will not assume jurisdiction: American Casualty Company of Reading v. Kligerman et al., 365 Pa. 168.

Respondents assert that the facts will not have congealed until the special statutory remedy of accounting in this court under the Register of Wills Act and the Orphans' Court Act of 1917 as amended will be available and that petitioner must wait until then for relief. Until then any decision will be purely advisory. They cite Keefer Estate, 351 Pa. 343, Sterrett's Estate, 300 Pa. 116, Dravo Estate, 360 Pa. 115, Kahn v. William Goldman Theatres, Inc., 341 Pa. 32, and the dissenting opinions in Moore v. Moore, 344 Pa. 322 and other cases.

Petitioner asserts that the remedy it now seeks is the only one available to it since it will be placed in jeopardy if it has to wait until the statutory remedy of accounting is available following the death of the widow. It asserts that this jeopardy is due to the fact that if it begins the erection of the building, at its own expense, within five years of the date of the death of testator, it may be guilty of a breach of the condition that the building be built at the time of distribution of testator's estate with testator's funds, whereas if the will is presently interpreted, it will avoid such jeopardy. Both parties are satisfied that no judicial

determination can be obtained by the statutory process of accounting before the widow's death since the court is not authorized to declare the status of remainder interests until after the death of the life tenant: Hunter's Orphans' Court Commonplace Book, vol. I, Judgments, p. 725, sec. 1(g).

We are satisfied that there is much more than advice being sought in this proceeding after reviewing the cases wherein our appellate and other courts have assumed jurisdiction. In Philadelphia Manufacturers Mutual Fire Insurance Company v. Rose, 364 Pa. 15, the issue was whether one of a series of buildings owned by the insured, which was damaged by fire, was covered by a fire insurance contract.

In Melnick v. Melnick, supra, the Superior Court accepted jurisdiction to determine the marital status of parties, one of whom had obtained a Nevada divorce decree.

In Moore v. Moore, 344 Pa. 324, the court interpreted an ambiguous premarital contract involving the husband's interest therein after his wife's death, although the wife was still alive. It was held the fact that a controversy is susceptible to relief through some other remedy does not debar declaratory judgment relief where, as here, the case is not ripe for relief by way of such other remedy, as it will not be until the wife dies.

Lower court cases wherein jurisdiction was accepted include Kraft's Trust, supra, wherein settlor, life tenant under a spendthrift trust deed, sought to surrender her life interest in order to avoid the inclusion of the principal of the trust for purposes of Federal estate tax, in which the court took jurisdiction on the ground that no remainder interests were prejudiced and that there was no other special statutory remedy available. In Jacobs' Estate, 58 D. & C. 577 (1947),

jurisdiction over a disputed trust provision in a will was accepted although no reason appears in the opinion why the question could not have been decided at the audit of an account. The court declared the vital factor was the presence of an actual controversy indicating imminent and inevitable litigation, coupled with the clear manifestation that the declaration sought will render practical help in ending the dispute, citing Cryan's Estate, 301 Pa. 386. In Stone v. Fenstermacher et al., 74 D. & C. 440, the court assumed jurisdiction for the purpose of interpreting an ambiguous deed at the time of pending resale of the property. In The Legal Intelligencer of Monday, November 3, 1952, appears the report of the decision of President Judge van Roden, of the Delaware County Orphans' Court, rendered October 20, 1952, wherein the court accepted jurisdiction over title to real estate under a will, the court stating that an ambiguity existed concerning the nature and extent of the interest as an asset of the estate.

In weighing the application of the principles of these and other decisions, we are mindful that in our question the will is before the court and the funds and the trustee of the estate are subject to our jurisdiction.

Examining the cases cited by respondents, we find in Dravo Estate, 360 Pa. 115, that the employes of a business were beneficiaries under a will conditioned upon their being associated with the business at the time of their death and their status thereunder was imperiled should they join a pension plan about to be established by the business, but not yet adopted. It was held that since the pension plan had not yet been adopted, there was no controversy and, therefore, the requested judgment would be merely advisory. In Keefer Estate, 351 Pa. 343, Gerety Estate, 349 Pa. 417, Sterrett's Estate, 300 Pa. 116 and List's Estate,

283 Pa. 255, jurisdiction was refused because of the pendency of other adequate proceedings in the lower courts.

In deciding whether there is a controversy existing between the parties, or the ripening seeds of one, we readily observe by reading the will that within its four corners is encompassed the whole problem. The question for interpretation which is not now before us, but which is the focal point of the proceeding, includes, inter alia, a determination of whether testator intended to perpetrate a cruel joke upon petitioner by giving to it his substance, but preventing it from acquiring that substance by attaching to it conditions impossible of performance; that in order to qualify for the gift, the erection of the building as a memorial to himself and his wife must be started within five years after his death and only with his funds, which funds he had previously in his will directed to be retained by his trustee for the benefit of his wife for her life. Or did he actually mean that such erection be started not more than five years after his *wife's* death? Therefore, there is involved a possible palpable error in draftsmanship of the will.

There is undoubtedly a controversy between the parties. In Moore v. Moore, supra, jurisdiction was accepted of a question of the interpretation of a premarital contract during the lifetime of the parties affecting the possible testamentary disposition of the wife's property. On page 328, the court said: "There can be no question that 'an actual controversy exists' ". Justices Maxey and Drew attacked this conclusion in strong dissents on the grounds that the majority opinion decided "future rights in anticipation of an event which may not happen" and, therefore, declared the majority opinion was merely advisory on a contract which may never become operative and before

litigation concerning it was either actual or "imminent and inevitable". It is clear that several things could have happened before the wife died and the agreement become operative, which might have altered the position of the parties. The husband might have predeceased the wife or they might have amicably reconciled their differences before death. In spite of these dissents, the case is controlling and has been followed without deviation. The requirement of the threat of "imminent and inevitable litigation" attaches not to the requirement of the finding of existence of an actual controversy, but to the second ground, viz., that the court must be satisfied that antagonistic claims are present. Nor does such requirement attach to the third ground where a party asserts a legal relation, status, right or privilege, etc., which is challenged by an adversary party who also asserts a like interest: Melnick v. Melnick, supra.

In the instant case we believe that petitioner's averments come within all three alternative requirements of the act. Petitioner's position is stronger than that of the parties in Moore v. Moore, supra, because as respondents aver, the only thing that might occur to alter the present situation of the parties is the death of the widow, life tenant, before August 16, 1953, an event which is so unlikely to occur as to be regarded de minimis, not a possibility strong enough to require us to hold that the controversy is not "imminent and inevitable". In addition, the special circumstances here warrant an immediate decision: Kariher's Petition (No. 1), supra. We are fully satisfied that a declaration or decree will terminate the uncertainty and the controversy between the parties.

Respecting the availability of alternative statutory remedies, we point to the language of the Supreme Court in Moore v. Moore, supra, p. 328:

"The fact that the controversy is susceptible to relief through some other remedy does not debar declaratory judgment relief where, as here, the case is not ripe for relief by way of such other remedy, *as it will not be until the wife dies.*" (Italics supplied.)

Respondents would have us withhold our hand until the widow dies to determine the question. It is clear that if we wait until then to hear the case, the position of petitioner will be in extreme jeopardy, whether it starts erection of the building before August 16, 1953, with its own funds (without mortgage or ground rent) because it will not be with testator's funds, or if it builds later, more than five years after testator's death, respondents no doubt will aver it a breach of condition. Clearly compelling petitioner to adopt the statutory remedy of accounting will injuriously affect petitioner and, therefore, will not constitute an adequate remedy for it. Such delay would give respondents an advantage which testator never intended. By taking jurisdiction now, we avoid this grave injustice, which would be a possible circumvention of testator's intention, a strategy which he probably never anticipated. Furthermore, it is quite clear, as stated in Kraft Trust, 77 D. & C. 308, there is no special Pennsylvania statute providing a remedy for this specific type of case. We must, therefore, afford opportunity for a speedy determination of this issue which would be delayed to the injury of petitioner if it were compelled to await the ordinary course of procedure: Grambo et al. v. South Side Bank and Trust Co., 141 Pa. Superior Ct. 176. Accordingly, we exercise the discretion vested in us in favor of petitioner: Kariher's Petition (No. 1), supra, p. 471.

The last reason assigned against our assuming jurisdiction is that some of the parties in interest are

minors and that there are possible unborn children who may take in remainder. Therefore, not all of the parties in interest on the record are sui juris. Reference is made to Kariher's Petition (No. 1), supra. Examination of the cited authority fails to reveal any definite rule on this subject. On the contrary, on page 474 of that opinion reference is made to the possibility of a class opening up to let in other children which were represented on the record by a trustee ad litem. In spite of this, the court assumed jurisdiction and decided the case on its merits. Moreover, if such a rule ever existed, it was modified in Orndoff et al. v. Consumers Fuel Co. et al., 308 Pa. 165, where minors were represented by their guardian. In the same Kariher decision the court said (p. 470):

"In determining whether the essential elements exist, the substance of matters, and not their mere form is the governing thing."

This rule we seek to follow. We believe our action in appointing a guardian and trustee ad litem is adequate protection to the interests so represented. Such representation would be adequate at the audit of an account and we believe there can be little difference between the status of such interests now and their status at the audit of an account following the life tenant's death. Besides, it has not been brought to our attention that such non-sui juris interests will not be bound by any judgment or decree rendered in this proceeding since they will probably stand in the shoes of persons sui juris and now represented on the record by analogy to the Act of April 18, 1949, P. L. 512, sec. 704.

The preliminary objections are dismissed and respondents are directed to file an answer within 15 days.

President Judge Klein did not sit at the argument nor did he participate in the decision of this case.