## Rose v. Rose et al.

*Smillie, Bean & Scirica,* for plaintiff.

*Wisler, Pearlstine, Talone & Gerber,* for defendant Rose and Sapowith.

*High, Swartz, Childs & Roberts,* for Penna. Co., etc., guardian.

DANNEHOWER, J., December 3, 1953. — Plaintiff filed a petition under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended and supplemented by the Acts of April 25, 1935, P. L. 72, and May 26, 1943, P. L. 645, 12 PS §831 et seq. Defendants, Bernard Z. Rose and Enid June Rose Sapowith, without replying to the averments of fact in the petition, have filed an answer raising preliminary questions of law. By so doing they admit for the purposes of this argument the truth of all the averments of fact in the petition. Defendant guardian for the two minors has filed an answer on the merits and new matter.

Stated as briefly as possible for a proper understanding of the matter, the petition avers that plaintiff is the father of defendant, Bernard Z. Rose, and the grandfather of the other defendants, Enid June Rose Sapowith, Barry Zion Rose and Rodman Hugh Rose, who are the children of Bernard Z. Rose; the latter two are minors being represented by guardians. Plaintiff, soon after the death of his first wife, remarried on July 11, 1951. On the evening of July 10, 1951, Bernard Z. Rose called upon plaintiff, and at the request of Bernard, plaintiff executed the following agreement:

"For one dollar and other valuable consideration I Benjamin Rose being the only owner of two thousand shares of common stock and nine hundred shares of preferred stock of Baltimore Markets, Inc., a Pennsylvania corporation and being the owner or legatee of three shares of common stock and three shares of preferred stock in said corporation by reason of the will of my late wife Annie, do hereby agree as follows:

"1. That upon my death I will give, set over and bequeath all the above mentioned stock one half to my son Bernard Z. Rose and the other half to my three grand-children, June, Barry and Roddy.

"2. I do agree that I will not transfer, sell, or alienate the stock above mentioned prior to my death nor in any manner to defeat the purposes of this document.

"I intend to be legally bound by the terms of this instrument in accordance with the Uniform Written Obligation Act.

"IN WITNESS WHEREOF I have hereunto set my hand and seal this 10th day of July 1951.

"BENJAMIN ROSE

"Witness   Lillian Rose
        "Nathan Rosenberg"

The above agreement was executed without any consideration other than the hope that it would restore harmony in the family, all of whom had strongly objected to plaintiff's remarriage.

In paragraph 10 of the petition it is alleged as follows:

"After the signing of the said agreement of 1951, the defendant, Bernard Z. Rose, who is now the Treasurer and General Manager of Best Markets, has assumed that he is in complete control of the business and refuses to recognize either the authority of the plaintiff, who is President of the Corporation, or of the Board of Directors, with the result that the success of the Corporation is seriously jeopardized by lack of harmony in the management. The plaintiff, Benjamin Rose, in view of the circumstances desires to sell his stock in the Best Markets, but is unable to do so because the defendant, Bernard Z. Rose, has asserted and publicly stated that his father has no right to sell the stock and that in accordance with the agreement above referred to, the stock must be held for him, the said Bernard Z. Rose, and the children of the said Bernard Z. Rose."

The stock referred to in the agreement is that of Baltimore Markets, Inc., now by a change of name known as Best Markets, Inc.

The petition further alleges that the aforesaid agreement is not binding since it was executed without consideration and constitutes an attempt to impose an illegal restraint on the alienation of plaintiff's property, and that the only parties having any interest in the controversy are plaintiff and defendants.

The preliminary objections filed by defendants Bernard Z. Rose and Enid June Rose Sapowith are: (a) Plaintiff's petition does not present the existence of an actual controversy within the meaning of section 6 of the Uniform Declaratory Judgments Act, supra; (b)

there are no antagonistic claims present between the parties which indicate imminent and inevitable litigation within section 6 of the aforesaid act, and that (c) any opinion under the present state of facts would be merely advisory.

Whether or not the court will take jurisdiction of a petition for a declaratory judgment is purely a matter of judicial discretion: Eureka Casualty Company v. Henderson, 371 Pa. 587 (1952). But the discretion involved is a limited one: Melnick v. Melnick et al., 147 Pa. Superior Ct. 564 (1942). It may not refuse to assume jurisdiction if the case is properly before the court and is entirely appropriate for declaratory adjudication in that it meets the requirements set forth in section 6 of the Declaratory Judgments Act.

Section 6 of the Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §836, provides:

"Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy exists between contending parties, or where the Court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form or remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy,

whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present; but proceeding by declaratory judgment shall not be permitted in any case where a divorce or annulment of marriage is sought."

It would therefore appear to the court that if an actual controversy exists and if the court is satisfied that one party asserts a legal relation, status, right or privilege, in which he has a concrete interest, and that there is a challenge or denial of such asserted relation, status, right or privilege by an adversary party, who also has a concrete interest therein, the court must take jurisdiction. Unquestionably, the latter requisite exists; therefore, the court will direct its attention to whether an actual controversy is present.

There is no easy fixed standard to guide the court in the determination of such question. The purpose of the act and the Pennsylvania precedents are to be considered. Section 12 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §842, provides that:

"This Act is declared to be remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered."

It is frequently stated that the basic purpose of the act is to provide a remedy before harm actually occurs. Thus, where an interpretation of a contract by the court will serve to avoid a breach of the contract and the consequential penalties and forfeitures, an actual controversy will be found to exist and the court will take jurisdiction: Girard Trust Co., Agent, v. Tremblay Motor Co. et al., 291 Pa. 507 (1928) ; Myers v. Blue Mountain Camp, Inc., 58 Montg. 364 (1942).

It is also generally stated that the court will not assume jurisdiction if the case is dependent upon a contingency that is too remote or may never happen, so that the question presented is merely academic and any adjudication by the court would amount to no more than an advisory opinion. This does not mean that the existence of contingencies will absolutely defeat jurisdiction. In Moore v. Moore, 344 Pa. 324 (1942), plaintiff sought from the court the construction of an antenuptial agreement in order to ascertain what, if any, interest the husband had upon her death in her personal estate. The agreement was such that it was conceded that if defendant should predecease his wife, or that if the wife should die without personalty there would then be no need for construction or litigation. Nevertheless the court granted declaratory relief, stating on page 328:

"There can be no question that 'an actual controversy exists between contending parties.' The husband claims the right to share in the wife's personal estate if she predeceases him; she denies such right. She is in the position of not being able by will to dispose of her personalty with certainty, because of her husband's claim to a large part of it. We are 'satisfied' that he 'asserts a relation, status, right or privilege in which he has a concrete interest' which is challenged and denied by his wife, who 'asserts a concrete interest therein' and we are 'satisfied' also 'that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding.' No statute provides a 'special' form of remedy for this 'specific type of case'. The fact that the controversy is susceptible of relief through some other remedy, does not debar declaratory judgment relief where, as here, the case is not ripe for relief by way of such other remedy, as it will not be until the wife dies. The Superior Court in *Grambo* v. *Southside Bank & Trust*

*Co.,* 141 Pa. Superior Ct. 176, 14A. 2d 925, has sanctioned a wider use of the declaratory judgment than theretofore prevailed. It has also done so in Day v. Ostergard, 146 Pa. Superior Ct. 27, 21A. 2d 586. We conclude that the present controversy is one within the scope of a declaratory judgment proceeding, and that the court below was in error in deciding to the contrary."

Certainly if an actual controversy was found to exist in the above case, despite the type of contingencies present, it can be said without reluctance that the controversy in the present case is cognizable under the Uniform Declaratory Judgments Act. In Moore v. Moore, supra, plaintiff was in no way restricted in the management and inter vivos disposition of her personal estate. No matter how the agreement was interpreted, it would not legally curtail her freedom to use her property as she saw fit; she ran no risk of incurring damages or other penalties upon a sale of her personal estate. Plaintiff in the present case does not enjoy such a secure position. He may not unconditionally transfer clear title to the stock in question. Any absolute transfer may very well result in damages being assessed against him or his estate, depending upon the validity of the agreement. Furthermore, plaintiff will find it very difficult to find a purchaser willing to purchase the stock at its market value while the agreement in question is outstanding. It is also important to note that Bernard Z. Rose has, by virtue of the agreement, usurped control of the corporation and that the lack of harmony in the management of the corporation has seriously jeopardized its success and has or at least will have a depreciating effect on the stock.

Plaintiff has a right to know whether it would be beneficial for him to maintain his interest in the corporation, and in order to make such decision, he must be apprised of the validity of the agreement; for if

the agreement is invalid, the lack of harmony which now prevails in the corporate management may dissipate itself and the future success of the corporation may be assured. The court will not require plaintiff to find a purchaser for his stock before rendering relief, for any prolonged delay may be seriously detrimental to plaintiff's interest.

Defendants contend that there are a number of contingencies present which will render the court's decision academic, but upon analyses the court finds that many of the contingencies are predicated upon facts which do not now exist. For instance, defendants assert that plaintiff may decide to retain his stock either because family harmony is again restored or the stock may appreciate in value, or he may have difficulty in selling the stock. But it appears clearly from the facts before us that there is now a lack of harmony in the family, and that plaintiff wishes to sell his stock. The court in granting declaratory relief as well as in refusing it, must confine itself to the facts as they now exist and the contingencies, if present, must emanate directly therefrom.

The court is of the opinion that plaintiff is entitled to declaratory relief. The facts in the petition disclose the existence of an actual controversy and that one party asserts a legal relation, status, right or privilege in which he has a concrete interest, and such relation, status, right or privilege is challenged by an adversary party who also asserts a concrete interest therein. It also appears that adjudication by the court will serve to terminate the uncertainty or controversy giving rise to the proceeding.

And now, December 3, 1953, for the foregoing reasons, the preliminary objections are dismissed and defendants, Bernard Z. Rose and Enid June Rose Sapowith, are directed to answer on the merits within 20 days from notice of this order.